532 So.2d 60 (1988)
PINELLAS EMERGENCY MENTAL HEALTH SERVICES, INC., Appellant,
v.
Shirley RICHARDSON and William Richardson, Her Husband, and Charles Lloyd Albury, Charles B. Albury, Maxine F. Albury, His Wife, Psychiatric Hospitals of Florida, Inc., d/b/a Horizon Hospital, Appellees.
No. 88-711.
District Court of Appeal of Florida, Second District.
October 12, 1988.
Leo H. Meirose, Jr., and Randall C. Callahan of Battaglia, Ross, Hastings, Dicus *61 and Andrews, P.A., St. Petersburg, for appellant.
Kirk S. Davis of Greene & Mastry, P.A., St. Petersburg, for appellees Shirley and William Richardson.
Michael S. Rywant and Matthew R. Danahy of Mitchell, Alley, Rywant and Vessel, P.A., Tampa, for appellees Charles Lloyd, Charles B. and Maxine F. Albury.
SCHEB, Acting Chief Judge.
Pinellas Emergency Mental Health Services, Inc. (PEMHS) appeals a nonfinal order dismissing its answer and affirmative defenses in a medical malpractice action. We vacate the order and remand for further proceedings.
Appellee Shirley Richardson and her husband retained counsel to represent them in a medical malpractice action against Appellant PEMHS. On December 12, 1985, the attorney sent PEMHS a notice of intent to initiate litigation with an accompanying discovery request, in accordance with the procedures contained in the Comprehensive Medical Malpractice Reform Act of 1985, Chapter 85-175, Laws of Florida, as set forth in section 768.57, Florida Statutes (1985). The notice instructed PEMHS to deliver the notice to its attorney or medical malpractice insurance company and direct the insurer to contact promptly the Richardsons' attorney for information concerning the claim. The notice also informed PEMHS that it or its medical malpractice insurance company was required by law to conduct a good faith investigation of the claim and within ninety days serve the claimant's attorney with a response which either rejected the claim, made a settlement offer, or admitted liability and offered arbitration.
The discovery request included a series of interrogatories and requested production of documents regarding PEMHS's alleged wrongful refusal to treat, care for, or admit Shirley Richardson to PEMHS's facility on October 13, 1983. In addition, the Richardsons sought information concerning PEMHS's liability coverage. The Richardsons received no response to their notice or their initial discovery request from either PEMHS or its insurer. Their attorney sent a second discovery request on January 14, 1986, seeking only information concerning "agreements, contracts, rules, regulations, written memoranda and the like between PEMHS and HRS during the period of 1983 to the present."
In March 1986, the Richardsons filed suit against PEMHS and others. A default was entered against PEMHS for its failure to respond to the Richardsons' complaint. Thereafter, on a motion by PEMHS, the court entered an order quashing service of process and setting aside the default. The Richardsons appealed, and the order was reversed in Richardson v. Albury, 505 So.2d 521 (Fla. 2d DCA 1987). On remand, the trial court vacated the default against PEMHS, and PEMHS filed its answer and affirmative defenses to the Richardsons' second amended complaint.
On August 7, 1987, Shirley Richardson and her husband filed their motion for dismissal of PEMHS's answer and affirmative defenses and/or summary judgment claiming PEMHS failed to follow the procedures contained in the Comprehensive Medical Malpractice Reform Act of 1985. In response, PEMHS filed an affidavit by Gerald F. Wennlund, PEMHS's associate director, who claimed that upon receipt of the notice and discovery request, he promptly contacted PEMHS's insurance company on December 16, 1985. Wennlund also claimed he received assurances from the president of the insurance company that the matter would be handled. He further stated that he mailed copies of the notice and the discovery request to the insurer, but he did not specifically state whether he had instructed the insurer to notify the claimant's attorney.
Wennlund also indicated that starting in December 1985, he had numerous follow-up telephone conversations and even directed some written inquiries to the insurer regarding the claim. On March 17, 1986, a copy of the January discovery request, summons, and amended complaint were mailed to the insurance company. Wennlund asserted that he was assured by the insurer in each instance that the company *62 was taking care of the matter. After repeating its earlier assurances, the insurer advised PEMHS's associate director on April 17, 1986, that the insurance company had designated an attorney to handle the claim and that PEMHS would be defended. The associate director indicated he had a final telephone conversation with the insurer on April 23, 1986, at which time he again received assurances that the matter was being handled.
At the hearing on the Richardsons' motion to dismiss PEMHS's answer and affirmative defenses, the trial judge considered Wennlund's affidavit and heard arguments of counsel. The court took the matter under advisement and indicated its intent to rule in favor of the Richardsons. In response to a motion for clarification, filed by PEMHS, the trial judge announced that he was dismissing PEMHS's answer and defenses. The judge explained:
The dismissal was based on the statute, not a compliance with the statute, and the language seems to be clear. "Shall" is for the cases interpreted. It is mandatory, and cases that use that kind of language, I don't think the court has a choice in a situation like that: where the language requires that certain action be taken and is not, then I don't think the Court  it is not discretionary with with (sic) the Court when you have a situation like that.
On February 8, 1988, the trial court entered an order dismissing PEMHS's answer and defenses.
On appeal, PEMHS raises two points. First, it argues that it is not a "health care provider" as defined in section 768.40(1)(b) of the Act and, therefore, is not required to comply with Sections 768.57(3)(a) or (6). Second, PEMHS contends that even if it is subject to Sections 768.57(3)(a) or (6), the trial judge erred in holding as a matter of law that he was required to dismiss PEMHS's answer and defenses.
The Florida Legislature enacted the Comprehensive Medical Malpractice Reform Act of 1985, Chapter 85-175, Laws of Florida, "in response to a perceived crisis in the availability of reasonably priced health care services." Pearlstein v. Malunney, 500 So.2d 585, 586 (Fla. 2d DCA 1986). Among its other objectives, the Act was designed to encourage pretrial settlement of meritorious claims in order to avoid expensive litigation and further increases in medical malpractice insurance premiums. McDonald v. McIver, 514 So.2d 1151 (Fla. 2d DCA 1987).
Turning first to the question of whether PEMHS is a "health care provider," we note that PEMHS is located at Horizon Hospital and regularly provides emergency mental health services through the use of emergency intake specialists. These specialists are trained to perform mental status assessments and determine whether or not to admit the patient.
We believe the Florida Legislature intended to require emergency mental health service providers, such as PEMHS, to be subject to the provisions of the Act even though these entities are not specifically included in Section 768.40(1)(b), Florida Statutes (1985). Our conclusion is supported by Section 768.57(1)(a) which defines a medical malpractice claim as one "arising out of the rendering of, or the failure to render, medical care or services." That subsection does not limit application of the Act to malpractice claims where there has been a failure to render physical, as opposed to mental, medical care or services. In McDonald v. McIver, this court held that the legislature intended to include dental services in its conception of "medical care or services" when it drafted Section 768.57(1)(a). Similarly, we believe the legislature intended "medical care or services" to include mental, as well as physical, medical care.
In view of our opinion that PEMHS is subject to the provisions of the Act, it becomes necessary to determine whether the trial court erred when it interpreted sections 768.57(3)(a) and 768.57(6) to require dismissal of PEMHS's answer and affirmative defenses as a matter of law. Section 768.57(3)(a) of the Act requires potential parties to assist in good faith an insurer or self-insurer in investigating potential claim:

*63 Each insurer or self-insurer shall investigate the claim in good faith, and both the claimant and prospective defendant shall cooperate with the insurer in good faith. If the insurer requires, a claimant shall appear before a pretrial screening panel or before a medical review committee, and shall submit to a physical examination, if required. Unreasonable failure of any party to comply with this section justifies dismissal of claims or defenses.
(Emphasis added.) In order to expedite discovery, the Act requires potential parties to engage in informal discovery during the presuit investigation period. Section 768.57(6) states:
Upon receipt by a prospective defendant of a notice of claim, the parties shall make discoverable information available without formal discovery. Failure to do so is grounds for a dismissal of claims or defenses ultimately asserted.
Although the statutory language in Section 768.57(3)(a) implies mandatory compliance, we think the legislature by including the word "unreasonable" intended that this mandate be exercised in a reasonable manner. Therefore, we think subsection (3)(a) should not be interpreted to mean that in every instance where a party does not cooperate with the insurer or self-insured in good faith, the party's claim or defenses must be dismissed as a matter of law. Rather, dismissal is subject to the discretion of a trial court after considering whether the prospective defendant acted unreasonably in fulfilling the statutory duty to cooperate with the insurer's presuit investigation in good faith.
Similarly, although a party's compliance with section 768.57(6) is mandatory, we think a determination of whether compliance with that subsection has occurred is also subject to the discretion of the trial judge. The statute states "[f]ailure to ... [make discoverable information available] is grounds for dismissal of claims or defenses ultimately asserted." (Emphasis added.) Although the legislature did not refer to "unreasonable failure" to comply in subsection (6) as it did in subsection (3)(a), it does indicate that failure to provide discovery is grounds for a trial court to dismiss claims or defenses. A court should interpret provisions of an act "as consistent with one another rather than in conflict, if there is any reasonable basis for consistency." State v. Putnam Co. Development Authority, 249 So.2d 6, 10 (Fla. 1971).
Therefore, because the Act is applicable to entities such as PEMHS, it was incumbent on the trial judge to evaluate whether PEMHS complied with the Act. Here the trial judge never arrived at that point. Rather, he erroneously dismissed PEMHS's answer as a matter of law instead of exercising his discretion. While the record reveals a basis for the trial court to determine that PEMHS's failure to make discoverable information available may have been unreasonable, this is a matter for the judge to determine in the exercise of his discretion.
Accordingly, we hold that PEMHS is subject to the provisions of the Act, but we vacate the trial court's order and remand for further proceedings consistent with this opinion.
RYDER and PARKER, JJ., concur.