FARMER, Judge,
dissenting.
The issue raised in this medical malpractice case is whether a trial court should strike a doctor’s defenses when the doctor fails entirely to conduct any presuit screening or investigation after receiving a notice of intent to initiate litigation. In my opinion, the statute requires the presumptive remedy to be a dismissal of the doctor’s defenses for such a statutory default unless there are special reasons to decline to do so. As there are none in this case, I think that certiorari should be granted and the case returned to the trial court for appropriate action.
The procedural facts are simple. Plaintiffs sent the respondents Fernandez, Vi-dalon, their professional association, and Doctors Gordon and Dolberg a notice of intent to initiate medical malpractice litigation. The notice was ostensibly sent with some requests for presuit discovery, but the trial court’s resolution of contested facts appears to be that no such requests were actually received by the doctors. They did testify that they thought their office staff sent the notice to their malpractice insurance carrier. The insurance carrier apparently says that it did not receive any such notice from its insureds. In any event, nothing was done during the ensuing 90-day period, and longer for that matter, to investigate, review and evaluate plaintiffs’ possible claim.
Ultimately, without receiving any response from the doctors, plaintiffs filed their malpractice action in the circuit court. After the doctors filed responsive pleadings, plaintiffs moved to strike their defenses on the grounds that they had failed to conduct any presuit screening or investigation of the incipient claim, a fact not seriously disputed by the doctors or their carrier, and that they had failed to respond to presuit discovery requests, a failure which the circuit court appears to have resolved in favor of the doctors upon a finding that no such request was enclosed with the notice.
In refusing to strike the doctors’ defenses, the trial court said:
THE COURT: I don’t favor striking those kinds of defenses or those kinds of claims for this kind of reason.
[[Image here]]
THE COURT: Let me put it this way. I wouldn’t be doing you any favors; it would come right back. The Fourth District does riot favor not hearing merits any more than I do. They are probably a lot more anxious to have trials on merits, rather than [dismissals on] technical defects.
5⅜! * * * Sfc l *
THE COURT: As I understand Dressier,[1] apparently there were egregious actions by the plaintiff to specifically prohibit the doctors from properly evaluating the case. A, I don’t think that so far what you’re telling me is egregious. So far what you are saying to me, according to counsel for the physicians, [is] that they were sloppy or negligent or whatever, at worst. At best it was an honest error. In any event, it’s not the kind of thing where they are flaunting [flouting-sic?] court orders and say I don’t care what the judge says, I won’t do it. I guarantee under situations like that where we have that kind of behavior and attitude, that is the purpose, for the court to say we have discretion, you have yanked the court around long enough, paint or get off the ladder. I think we have not risen to that point yet and hopefully we won’t.
I interpret the foregoing to amount to a determination that doing absolutely nothing to investigate a potential malpractice claim after receiving a notice of intent may be unreasonable, but the failure should not result in a dismissal of the doctors’ defens *1381 es because dismissal is too harsh a sanction for such non-compliance with the statute.
I cannot agree with this construction of the statute. Section 766.106(3)(a), Florida Statutes (1991), creates a comprehensive duty of presuit investigation and screening. It begins by saying flatly that during the 90-day period after receipt of a notice to initiate litigation “the prospective defendant’s insurer or self-insurer[2] shall conduct a review to determine the liability of the defendant.” [e.s.] The statutory duty of “investigation, review, and evaluation” is elaborately prescribed. At the end of the elaboration the statute says:
Each insurer or self-insurer shall investigate the claim in good faith, and both the claimant and prospective defendant shall cooperate with the insurer in good faith. If the insurer requires, a claimant shall appear before a pretrial screening panel or before a medical review committee and shall submit to a physical examination, if required. Unreasonable failure of any party to comply with this section justifies dismissal of claims or defenses. * * * [e.s.]
In Pinellas Emergency Mental Health Services Inc. v. Richardson, 532 So.2d 60 (Fla. 2d DCA 1988), involving a failure to comply with informal discovery requests during the presuit screening period, the court explained this text as follows:
Although the statutory language * * * implies mandatory compliance, we think the legislature by including the word “unreasonable” intended that this mandate be exercised in a reasonable manner. Therefore, we think [it] should not be interpreted to mean that in every instance where a party does not cooperate with the insurer or self-insured in good faith, the party’s claim or defenses must be dismissed as a matter of law. Rather, dismissal is subject to the discretion of the trial court after considering whether the prospective defendant acted unreasonably in fulfilling the statutory duty to cooperate with the insurer’s pre-suit investigation in good faith, [e.o.]
532 So.2d at 63. In that case, the doctor testified that he promptly sent the notice to initiate litigation to his insurer, and that two weeks later he began a series of numerous follow-up telephone conversations with the insurer and even sent it some written inquiries.
In contrast, the present case contains testimony by Doctors Fernandez and Vidal-on that they thought that their office manager sent the notice to the insurer, but that when they asked her about it after suit had been filed, she could not remember if she had done so. I therefore have no trouble in concluding from the undisputed evidence that the failure here to conduct any presuit investigation at all was unreasonable.[3] The question in my mind thus becomes how to construe the above highlighted sentence in section 766.106(3)(a).
As I interpret Judge Burnstein’s observations — and, for that matter, Judge Scheb’s opinion in Richardson — it is their reading that the traditional “dismissal-is-too-harsh-a-remedy” standard for most failures to comply with discovery orders is what the legislature had in mind for section 766.106(3)(a). I cannot agree. On the contrary, the statute does not repose “discretion” to determine if non-compliance has *1382 resulted and whether that non-compliance was unreasonable, so much as it creates a judicial duty to determine whether those facts exist when the issue has been properly raised. When the trial judge determines that those facts do exist, the next inquiry relates to the extent of the discretion given to the judge to decide the remedy for the statutory non-compliance.
Given the precise purpose of the presuit screening process and the statutory text, a proper construction of subsection (3)(a) is that when a judge finds both that the provider has failed to investigate and screen the claim after receipt of the notice, and that the failure is unreasonable (whether through simple negligence or otherwise), the judge should ordinarily strike the defenses, unless special circumstances make it unjust to do so. The burden should be on the provider to establish the special circumstances. In short, dismissing defenses is the presumptive remedy, not the exceptional one.
When the legislature rewrote the medical negligence laws and adopted the predecessor of section 766.106(3)(a), it created new substantive rights and obligations. If someone wants to sue a doctor for malpractice, the substantive right to do so now includes certain duties, among which is that the potential claimant first get an opinion from a similar provider that the prospective defendant has been negligent and then give that provider notice in writing of the intent to sue. The failure to comply with that obligation, if unreasonable, forfeits the right to sue.
Correspondingly, the provider must himself make a good faith investigation, review and evaluation of the incipient claim after receiving the notice. The failure of the provider to do so, if unreasonable, similarly forfeits the provider’s substantive right to defend on the merits. To read this statute any other way is to ignore that plain meaning of the text and to engage in “statutory construction” by rewriting the statute to add a condition that the legislature left out, namely that dismissal should be rare and only for willful violation of a court order.
In contrast to the foregoing, our “too-harsh-a-sanction” rule for discovery and other violations of court orders grows out of our adjectival, or procedural, law. Discovery rules are procedural. Violations of them are procedural violations. It is appropriate not to allow the harshest sanction of them all, a dismissal of claims or defenses, for most transgressions of procedural rules. If we routinely allowed such dismissals, the procedural law would soon be seen as a crevice into which most substantive rights could fall, and access to the courts could become a right in name only. The judiciary would thus exert too much control over the legislature’s grant of substantive rights.
Obviously these considerations have no place where it is the substantive law itself that creates the presuit duties and also establishes the remedies for violations of those duties. The legislature has the sole power to regulate the provision of health care services and to limit the remedies for misadventure in the provision of such services. It alone can decide which classes of claims can be remedied by common law money damages, which must be remedied by administrative tribunals or by other forms of redress.
The power to regulate comprehends the power to impose conditions before suit can be brought, and that power also includes the power to impose conditions on the defense of such suits. That is the power that underlies section 766.106(3)(a). It is the basis for the remedy of dismissal of claims or defenses if presuit screening is unreasonably not done on either side. It was up to the legislature to determine whether this substantive right would carry no remedy, a moderate remedy, or a harsh remedy for non-compliance. The courts had no role in this decision. If the legislature wanted harsh, it could — as, indeed, it did — impose harsh.
Unlike the rationale in discovery violations, it is the legislative prerogative that compels the “harsh sanction” of dismissal where a provider has, as here, unreasonably neglected his presuit investigation duty. The mere fact that the non-compli- *1383 anee occurs because the doctor’s staff did not notify the insurer cannot mean that duty of presuit investigation has been taken off the doctors’ shoulders, or that the remedy should be lessened. If it did, we can surely trust that few such claims will ever be screened by the providers, who would then be free to put their heads in the corporate sand and later plead: “I thought my staff sent the papers to my insurer.”
The purpose of presuit screening is that, if both sides will do so, many budding suits will never blossom. Some will be disposed of after the investigation. Some claimants will decide that their claim should not be pursued; some providers will decide that there is evidence of negligence and seek mediation or settlement. In either case, the courts will be spared another medical malpractice suit — usually complex, often demanding on judicial time and resources, and frequently displacing other meritorious claims by its sheer size and time.
But if one of the parties simply does nothing, as here, there is no chance that the historical void can ever be filled. No post-litigation analysis of prejudices or benefits, or the severity of the sanctions, can then compensate the judicial system for that duty foresworn.
The only reasonable construction of what the legislature has set down on paper is that the utter failure to do anything at all is unreasonable, and the burden is on the provider to show that some unusual or special circumstance should relieve him from the presumed penalty for his failure to investigate and evaluate. Here, no such circumstance was shown. In an abundance of caution, however, I should remand this case to the trial court to consider afresh the motion to strike, in light of the proper construction of the statute.
I therefore dissent from the denial of certiorari.[4]

. This is a reference to our decision in Dressler v. Boca Raton Community Hospital, 566 So.2d 571 (Fla. 4th DCA 1990), rev. denied, 581 So.2d 164 (Fla.1991), where we affirmed a dismissal of a plaintiff’s medical malpractice claim because the plaintiff's objections and perfunctory responses to a hospital’s presuit discovery requests thwarted the hospital’s attempt to engage in presuit investigation, review and evaluation of plaintiffs claim. It obviously has little relevance to this case, except that it involves a construction of the same statute at issue here.

. The term “self-insurer" includes an "uninsured prospective defendant”. § 766.106(l)(b), Fla. Stat. (1991). Answers to interrogatories in this case show that the insurer is defending under a reservation of rights, presumably because the doctors’ failure to insure delivery of the notice of intent to sue papers to the insurer is a violation of the policy condition requiring prompt notification to the carrier of a possible claim. If the doctors’ defenses are stricken or dismissed, the carrier can undoubtedly show prejudice and thus be relieved of the covenant of coverage. These doctors are thus likely, if the correct construction of section 766.106(3)(a) should prevail, to be uninsured.

. If a defendant in a civil action sought relief from a default and gave this same explanation to establish "excusable neglect”, we would rightly conclude that the explanation was insufficient to warrant such relief. I do not see how it can be otherwise with this statute. Reading the statute as the court does would allow — indeed, it would encourage — providers to adopt an attitude of deliberate indifference to the statutory duties, secure in the knowledge that they could still fully defend the later civil action. It would make the statutory duty a triviality. We are not supposed to construe statutes in that way.

. I cannot agree that common law certiorari is unavailable to enforce the statutory right to a dismissal of defenses when a provider fails unreasonably to conduct presuit investigation under section 766.106(3)(a). To require that the case go through an entire trial before this issue can be reviewed on plenary appeal is to engage in the utter evisceration of the statute. It means that the system is burdened with the very kind of circumstance that the statute was designed to avoid: the pendency of .nearly every medical malpractice claim in a court without presuit screening. As we have recently held in Henn v. Sandler, 589 So.2d 1334 (Fla. 4th DCA 1991) (en banc), the legislature may create substantive rights embracing purely procedural matters in litigation which require vindication by the extraordinary remedy of certiorari. For purposes of pretrial certiorari review, I am unable to distinguish the kind of substantive right at issue in Henn from that here.