610 So.2d 477 (1992)
Suzanne GROTH, Appellant,
v.
Ronda C. WEINSTOCK, Ph.D., Appellee.
No. 92-80.
District Court of Appeal of Florida, Fifth District.
November 6, 1992.
Rehearing Denied January 5, 1993.
Robert S. Sigman of Robert S. Sigman, P.A., Maitland, for appellant.
*478 Francis H. Sheppard of Rumberger, Kirk & Caldwell, A Professional Ass'n, Orlando, for appellee.
HAMMOND, K., Associate Judge.
Suzanne Groth appeals from the final judgment dismissing her action against Dr. Ronda Weinstock, a licensed clinical psychologist. The complaint was dismissed because Suzanne failed to allege compliance with the pre-suit requirements for medical malpractice actions against "health care providers." We conclude that Dr. Weinstock is not a health care provider for purposes of the pre-suit requirements and accordingly reverse the order and remand for further proceedings.
In February 1991, Suzanne filed a two count complaint charging Dr. Ronda Weinstock with negligence and intentional infliction of emotional distress. Suzanne had sought psychotherapy and marriage counseling from Dr. Weinstock beginning in 1985; she attended some of the therapy sessions with her husband Robert Groth. The complaint alleged that Dr. Weinstock had entered into an affair with Robert Groth while Suzanne and Robert were patients and former patients. Among other things, Suzanne charged Dr. Weinstock with conflict of interest and breach of trust, causing her to suffer great emotional and physical pain.
Dr. Weinstock filed a motion to dismiss, alleging in part that the complaint failed to allege that Suzanne had complied with the pre-suit screening requirements for a medical malpractice action under the Comprehensive Medical Malpractice Reform Act. The trial court noted that the Act did not include psychologists or other mental health professionals within the definition of "health care provider" to whom the Act applies. However, in Pinellas Emergency Health Services v. Richardson, 532 So.2d 60 (Fla. 2d DCA 1988), the second district concluded that the legislature intended to cover mental, as well as physical, medical care and held that an emergency mental health service at a hospital was subject to the provisions of the Act. Based on this case, the court below granted Dr. Weinstock's motion to dismiss because Suzanne had failed to allege compliance with the pre-suit screening requirements under the Act.
On appeal, Suzanne contends that a psychologist is not a health care provider under the Comprehensive Medical Malpractice Reform Act and thus she was not required to comply with the notice requirements of the Act. Chapter 766 governs standards for recovery in medical malpractice actions and provides for certain notice requirements to health care providers. For example, section 766.106 provides for notice before filing an action and a pre-suit screening period. This section applies to any "claim for medical malpractice" which is defined as "a claim arising out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (1991). Compliance with this statute is a condition precedent to maintaining a suit against a health care provider. NME Hospitals, Inc. v. Azzariti, 573 So.2d 173 (Fla. 2d DCA 1991).
Although it defines a claim for medical malpractice, section 766.106 does not define a "health care provider." In NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991), the court lamented the difficulty of interpreting chapter 766 because of the lack of comprehensive definitions. 590 So.2d at 440, n. 1. The parties on appeal and the court below have relied on different definitions of "health care provider."[1]
The court below relied on section 766.102 which sets forth the standards of recovery in a medical malpractice action:
766.102 Medical negligence; standards of recovery. 
(1) In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of providing by the greater weight of evidence that the alleged *479 actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. (emphasis added)
Section 768.50(2)(b), Florida Statutes (1985) provides as follows:
(b) `Health care provider' means hospitals licensed under chapter 395; physicians licensed under chapter 458; osteopaths licensed under chapter 459; podiatrists licensed under chapter 461; dentists licensed under chapter 466; chiropractors licensed under chapter 460; naturopaths licensed under chapter 462; nurses licensed under chapter 464; clinical laboratories registered under chapter 483; physicians' assistants certified under chapter 458; physical therapists and physical therapist assistants licensed under chapter 486; health maintenance organizations certified under part II of chapter 641; ambulatory surgical centers as defined in paragraph (c); blood banks, plasma centers, industrial clinics, and renal dialysis facilities; or professional associations, partnerships, corporations, joint ventures, or other associations for professional activity by health care providers.[2]
In Pinellas Emergency Mental Health Services, Inc. v. Richardson, 532 So.2d 60 (Fla. 2d DCA 1988), the Richardsons filed a medical malpractice action against Pinellas and others based on Pinellas' alleged wrongful refusal to treat, care for, or admit Shirley Richardson to Pinellas' facility. On appeal, Pinellas argued that it was not a health care provider and thus was not required to assist in investigating a potential medical malpractice claim under the Act. The second district rejected this argument, explaining as follows:
[W]e note that [Pinellas] is located at Horizon Hospital and regularly provides emergency mental health services through the use of emergency intake specialists. These specialists are trained to perform mental status assessments and determine whether or not to admit the patient.
We believe the Florida Legislature intended to require emergency mental health service providers, such as [Pinellas], to be subject to the provisions of the Act even though these entities are not specifically included in Section 768.40(1)(b), Florida Statutes (1985). Our conclusion is supported by Section 768.57(1)(a) which defines a medical malpractice claim as one `arising out of the rendering of, or the failure to render, medical care or services.' That subsection does not limit application of the Act to malpractice claims where there has been a failure to render physical, as opposed to mental, medical care or services. In McDonald v. McIver, this court held that the legislature intended to include dental services in its conception of `medical care or services' when it drafted Section 768.57(1)(a). Similarly, we believe the legislature intended `medical care or services' to include mental, as well as physical, medical care.
532 So.2d at 62.
We distinguish Pinellas from the present case and conclude that the marriage counseling and therapy performed by Dr. Weinstock does not render her a "health care provider" under the Act. Pinellas was a mental health service facility located at a hospital and had the authority to admit patients to the hospital. Thus Pinellas was rendering "medical care or services" and was covered by the Act. In contrast, there are no allegations that Dr. Weinstock was associated with a hospital, had the authority to admit patients to a hospital, or rendered anything other than counseling services. None of the health care provider definitions relied on by the parties refers to a group which provides only psychological *480 services. As Suzanne correctly points out, psychologists are licensed under chapter 490 and 491 and there are no references to these chapters. However, chapter 766 does specifically list health care providers licensed under other chapters. It is a well-established principle of statutory construction that the mention of one thing implies the exclusion of another. PW Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla. 1988); Towerhouse Condominium, Inc., v. Millman, 475 So.2d 674 (Fla. 1985); Tillman v. Smith, 533 So.2d 928 (Fla. 5th DCA 1988). Since psychologists are not contained within the various definitions of health care providers in chapter 766, we conclude that the legislature did not intend to include counseling services under the Comprehensive Medical Malpractice Reform Act.[3] Thus, Suzanne was not required to meet the statutory notice requirements of the Act and the trial court erred in dismissing her complaint for failure to do so.
REVERSED and REMANDED.
HARRIS and DIAMANTIS, JJ., concur.
NOTES
[1] See § 768.40(1)(b), Fla. Stat. (1985); § 766.106, Fla. Stat. (1991).
[2] Section 768.50(2)(b), Florida Statutes (1985) was repealed except to the extent that it was incorporated within section 766.102(1). NME Properties, 590 So.2d at 440.
[3] Courts are without power to construe an unambiguous statute in a way which would extend or modify its express terms. Holly v. Auld, 450 So.2d 217 (Fla. 1984).