629 So.2d 835 (1993)
Ronda C. WEINSTOCK, PH.D., Petitioner,
v.
Suzanne GROTH, Respondent.
No. 81234.
Supreme Court of Florida.
December 23, 1993.
Francis H. Sheppard of Rumberger, Kirk & Caldwell, Orlando, for petitioner.
J. Scott Murphy of Anderson, Murphy & O'Hara, Orlando, for respondent.
KOGAN, Justice.
We have for review Groth v. Weinstock, 610 So.2d 477 (Fla. 5th DCA 1992), because of conflict with Pinellas Emergency Mental Health Services, Inc. v. Richardson, 532 So.2d 60 (Fla. 2d DCA 1988). We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution.
In this case, we are asked to decide whether a plaintiff in a negligence action against a licensed clinical psychologist must comply with the presuit notice requirements of the Comprehensive Medical Malpractice Reform Act of 1985. For the reasons set forth below, we conclude that the notice requirements of the Act only apply in actions against "health care providers" as defined in *836 chapter 766, Florida Statutes (1991), and those who are vicariously liable for the acts of a health care provider.
In 1985, Suzanne Groth (Groth) began receiving psychotherapy and marriage counseling from Dr. Ronda Weinstock, a licensed clinical psychologist. Robert, Groth's husband, also attended several of the therapy sessions. In February 1991, Groth filed a complaint alleging that Dr. Weinstock had entered into an affair with Robert while she still owed a duty of care to Groth. The complaint charged Weinstock with negligence and intentional infliction of emotional distress.
Weinstock filed a motion to dismiss the complaint because it failed to allege compliance with the presuit notice requirements of the Comprehensive Medical Malpractice Reform Act of 1985. The relevant provisions of the Act, which are found in chapter 766, Florida Statutes (1991), govern standards for recovery in medical malpractice actions and provide for certain notice requirements in such actions. Specifically, Weinstock maintained that Groth failed to comply with section 766.106(2), which requires notice to the defendant in a medical malpractice action after completion of presuit screening, and before the claim is filed. The trial court acknowledged that psychologists were not included in the Act's various definitions of "health care provider" to which the Act applies. However, it granted the motion to dismiss based on the decision in Pinellas Emergency Health Services v. Richardson. The Pinellas court held that a hospital's emergency mental health service, which was not specifically defined as a health care provider in chapter 766, was subject to the provisions of the Act because the Legislature intended the Act to cover "mental, as well as physical, medical care." 532 So.2d at 62.
On appeal, the district court reversed the dismissal, holding that Groth was not required to comply with the presuit notice provisions because Weinstock was not a health care provider under the Act. The district court reached this conclusion because psychologists are not expressly included in the various definitions of health care provider contained in chapter 766. 610 So.2d at 479-80. The district court also found Pinellas distinguishable because the Pinellas facility was located at a hospital and had the authority to admit patients to the hospital. Accordingly, the court held that, unlike Weinstock, the Pinellas facility rendered "medical care or services" and was, therefore, subject to the provisions of the Act. 610 So.2d at 479.
It is clear that the provisions of the Medical Malpractice Reform Act must be met in order to maintain an action against a health care provider. See NME Hospitals, Inc. v. Azzariti, 573 So.2d 173 (Fla. 2d DCA 1991). Thus, if Dr. Weinstock is a health care provider, Groth's complaint was properly dismissed. However, as both the trial and district courts below noted, psychologists licensed under chapters 490 and 491, Florida Statutes (1991), are not included in the chapter 766 definitions of "health care provider." See § 768.50(2), Florida Statutes (1985);[1] §§ 766.101(1)(b),[2] .105(1)(b),[3] Florida Statutes *837 (1991). We agree with the district court below that the exclusion of psychologists from the various definitions of this term indicates a legislative intent that psychologists not be classified as health care providers. PW Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla. 1988) (express mention of one thing implies the exclusion of another). This limited construction of the term precludes the absurd conclusion that clergy and others who provide counseling similar to that provided by Dr. Weinstock, but who also are not expressly defined as health care providers, might be subject to the provisions of the Act.
Weinstock claims that although psychologists are not expressly defined as health care providers there are several reasons to extend the Act's notice requirements to malpractice actions against psychologists. First, Weinstock maintains that section 766.106(2) requires that notice be given to all "prospective defendants," regardless of whether they fall within the statutory definition of a health care provider:
After completion of presuit investigation ... and prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant and, if any defendant is a health care provider licensed under chapter 458, chapter 459, chapter 460, chapter 461, or chapter 466, the Department of Professional Regulation by certified mail, ... of intent to initiate litigation for medical malpractice.
§ 766.106(2) (emphasis added). Weinstock contends that if the Legislature had intended the notice provisions to apply only to health care providers listed in chapter 766, it would have clearly stated its intention just as it did when it listed the health care providers for which notice must be sent to the Department of Professional Regulation.
In support of her argument, Weinstock points out that the Second District Court of Appeal has extended the provisions of the Act to cover various entities not specifically designated health care providers in chapter 766. For example, as noted above, in Pinellas, the Second District held that an emergency mental health care facility located at a hospital and staffed with emergency intake specialists, who performed mental status assessments to determine whether a patient should be admitted to the hospital, was subject to the provisions of the Act although the facility was not specifically listed as a health care provider. The court reasoned that its conclusion was
supported by Section 768.57(1)(a) which defines a medical malpractice claim as one "arising out of the rendering of, or failure to render, medical care or services." That subsection does not limit application of the Act to malpractice claims where there has been a failure to render physical, as opposed to mental, medical care or services.
Pinellas, 532 So.2d at 62. Weinstock also relies on NME Properties, Inc. v. McCullough. In McCullough, the Second District held that although a nursing home is not a health care provider as defined under chapter 766, the notice provisions of the Act apply to a negligence action against a nursing home if the professional medical negligence standard of care set forth in section 766.102 applied to the active tortfeasor  the agent or employee of the nursing home. Id. at 441.
Section 766.106(2) does not define the "prospective defendants" to whom notice must be given. However, it is only logical that the term refers to defendants in a medical malpractice action who are health care providers as defined in chapter 766 or who, although not expressly included within that *838 class, are vicariously liable for the acts of a health care provider. It is clear that under section 766.102(1) "prospective defendants" in medical negligence actions are "health care providers as defined in [section] 768.50(2)(b):"

In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider.
§ 766.102(1) (emphasis added). It is equally clear that under the doctrine of respondeat superior, an employer of a health care provider also may be a "prospective defendant" in a medical negligence action, even if the employer does not fall within the statutory definition of health care provider. As noted by the McCullough court, such a defendant may be vicariously liable under the professional medical negligence standard of care set forth in section 766.102(1) when its agent or employee, who is a health care provider, negligently renders medical care or services. 590 So.2d at 441. Thus, we agree with the McCullough court that the proper test for determining whether a defendant is entitled to notice under section 766.106(2) is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1).
This narrow construction of the chapter 766 presuit notice requirement is in accord with the rule that restrictions on access to the courts must be construed in a manner that favors access. See G.B.B. Investments, Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977) (any restriction on access to the courts must be construed in favor of the constitutional right); Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974) (same). Moreover, the purpose of the chapter 766 presuit requirements is to alleviate the high cost of medical negligence claims through early determination and prompt resolution of claims, not to deny access to the courts to plaintiffs such as Groth. See Ragoonanan v. Associates in Obstetrics and Gynecology, 619 So.2d 482 (Fla. 2d DCA 1993).
Accordingly, Groth was not required to give Weinstock notice prior to filing the instant action because Weinstock is not a health care provider to which the section 766.102(1) standard of care applies.[4] Therefore, we approve the decision below to the extent that it is consistent with this opinion and disapprove Pinellas to the extent it conflicts herewith.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
NOTES
[1] Section 768.50(2)(b), was repealed except to the extent that it is incorporated by reference into section 766.102(1), Florida Statutes (1991). NME Properties, Inc. v. McCullough, 590 So.2d 439, 440 (Fla. 2d DCA 1991). Section 768.50(2)(b) defines health care providers as

hospitals licensed under chapter 395; physicians licensed under chapter 458; osteopaths licensed under chapter 459; podiatrists licensed under chapter 461; dentists licensed under chapter 466; chiropractors licensed under chapter 460; naturopaths licensed under chapter 462; nurses licensed under chapter 464; clinical laboratories registered under chapter 483; physicians' assistants certified under chapter 458; physical therapists and physical therapist assistants licensed under chapter 486; health maintenance organizations certificated under part II of chapter 641; ambulatory surgical centers as defined in paragraph (c); blood banks, plasma centers, industrial clinics, and renal dialysis facilities; or professional associations, partnerships, corporations, joint ventures, or other associations for professional activity by health care providers.
[2] Section 766.101(1)(b) defines health care providers as

physicians licensed under chapter 458, osteopaths licensed under chapter 459, podiatrists licensed under chapter 461, dentists licensed under chapter 466, chiropractors licensed under chapter 460, pharmacists licensed under chapter 465, or hospitals or ambulatory surgical centers licensed under chapter 395.
[3] Section 766.105(1)(b) defines a health care provider as any

1. Hospital licensed under chapter 395.
2. Physician licensed, or physician assistant certified, under chapter 458.
3. Osteopath licensed under chapter 459.
4. Podiatrist licensed under chapter 461.
5. Health maintenance organization certificated under part I of chapter 641.
6. Ambulatory surgical center licensed under chapter 395.
7. "Other medical facility" as defined in paragraph (c).
8. Professional association, partnership, corporation, joint venture, or other association by the individuals set forth in subparagraphs 2., 3., and 4. for professional activity.
[4] We decline to address the other claims raised by Weinstock.