590 So.2d 439 (1991)
NME PROPERTIES, INC., d/b/a East Manor Medical Care Center, Petitioner,
v.
Theresa E. McCULLOUGH, Respondent.
No. 91-01925.
District Court of Appeal of Florida, Second District.
September 13, 1991.
*440 Thomas Saieva of Saieva & Walsh, P.A., Tampa, for petitioner.
David S. Maglich of Fergeson, Skipper, Shaw, Keyser, Baron & Tirabassi, P.A., Sarasota, for respondent.
ALTENBERND, Judge.
The defendant, NME Properties, Inc., d/b/a East Manor Medical Care Center (East Manor), seeks a writ of certiorari requiring the plaintiff, Theresa E. McCullough, to comply with the presuit conditions of chapter 766 before proceeding with this lawsuit. We deny the writ because East Manor is a nursing home and is not itself a "health care provider" for purposes of section 766.106, Florida Statutes (1989). The plaintiff's complaint does not allege that any of the nursing home's agents or employees involved in this case are health care providers, nor does it allege a "claim for medical malpractice" as defined in section 766.106(1)(a), Florida Statutes (1989). The plaintiff's complaint does not seek recovery based on either direct or vicarious liability under the professional standard of care for medical negligence described in section 766.102, Florida Statutes (1989). Accordingly, the presuit requirements of chapter 766 do not apply to the complaint.
Our record is limited to three documents: the plaintiff's short two-count complaint; the defendant's motion to dismiss; and the order denying that motion. The complaint alleges that the plaintiff entered the East Manor nursing home facility to recuperate after surgery on her fractured elbow. On April 15, 1989, "agents or employees" of East Manor "negligently treated or handled" the plaintiff, causing her to suffer a severe injury to her previously fractured elbow. Count I of the complaint alleges simple negligence, and count II alleges a violation of section 400.022, Florida Statutes (1989), which sets forth certain rights of nursing home residents. East Manor moved to dismiss the complaint because the plaintiff had failed to comply and plead compliance with sections 766.104, 766.106, and 766.203-206. After the trial court denied the motion, East Manor filed this petition for writ of certiorari. Certiorari is a proper method to test such a nonfinal order. NME Hospitals, Inc. v. Azzariti, 573 So.2d 173 (Fla. 2d DCA 1991).
The plaintiff argues that chapter 766 does not apply to nursing homes or to statutory claims against nursing homes under chapter 400. We agree that a nursing home is not a "health care provider as defined in s. 768.50(2)(b)." § 766.102(1), Fla. Stat. (1989); see Silva v. Southwest Florida Blood Bank, Inc., 578 So.2d 503 (Fla. 2d DCA 1991) (section 768.50(2)(b), Florida Statutes (1985), was not repealed to the extent that it is incorporated within section 766.102(1), Florida Statutes (1989)). We do not believe that the general category, "professional associations, partnerships, corporations, joint ventures, or other associations for professional activity by health care providers," in section 768.50(2)(b) was intended to expand the definition of health care provider to include a nursing home. Nursing homes are not included in the definition of health care provider in either section 766.101(1)(b) or section 766.105(1)(b), Florida Statutes (1989). Nursing homes are licensed under chapter 400. Chapter 766 does not appear to contain any reference to chapter 400. Chapter 766 does, however, contemplate that the medical staff of a nursing home will establish a medical review committee. § 766.101(1)(a)1.c., Fla. Stat. (1989). Thus, while we agree that a nursing home is not a health care provider, this does not mean that the provisions of chapter 766 have no relevance for nursing homes.[1]
*441 East Manor argues that section 766.106 and the other presuit requirements apply to every "claim for medical malpractice" as defined to mean "a claim arising out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (1989). It suggests that this provision may apply to defendants who are not health care providers. Thus, it concludes that the plaintiff's allegations fit within the definition of a claim for medical malpractice and that it need not be a health care provider to gain the benefit of these provisions.
We agree that these notice provisions may occasionally apply to a defendant that is not a health care provider, but we do not find this case to be one of those occasions. The simplest test to determine whether the notice provisions apply to a claim is whether the professional medical negligence standard of care described in section 766.102, Florida Statutes (1989), applies to the active tortfeasor.
Although a nursing home is not itself a health care provider for purposes of section 766.102, it may be vicariously liable under that higher standard of care for the acts of some of its agents or employees. For example, East Manor probably employs nurses who are licensed under chapter 464. Under respondeat superior, East Manor may be liable under the higher professional standard of care when its agent, who is actively involved in the incident, is a health care provider rendering medical care or service. On the other hand, East Manor may be liable under an ordinary negligence standard of care when other nonprofessional employees commit alleged negligence, or when an incident does not involve medical care.
In this case, the complaint does not allege that the employees or agents rendered medical care or service. The complaint also does not allege that the employees or agents were health care providers or owed a professional standard of care. Cf. Pinellas Emergency Mental Health Servs., Inc. v. Richardson, 532 So.2d 60 (Fla. 2d DCA 1988) (plaintiff affirmatively alleged medical negligence concerning a facility, some of whose employees were professionals). It may be that the agents who allegedly injured the plaintiff were order-lies or other employees without professional status. Even if the agents were licensed professionals, the alleged incident may not have involved their professional skill or judgment. In any event, this terse complaint is not sufficient to permit expert testimony concerning a breach of a professional standard of care or to permit jury instructions under the medical negligence standard of care. Under these circumstances, we perceive no reason to subject the claim to the presuit requirements of chapter 766.
We recognize the possibility that a plaintiff could disguise a medical negligence claim as a simple negligence claim. In doing so, the plaintiff might hope to submit the case to a jury without expert testimony and to prove only the ordinary negligence standard of care. While such a tactic would seem to involve great risk, we do not rule out a defendant's option in such a case to move to strike the complaint as a sham pleading pursuant to Florida Rule of Civil Procedure 1.150, and to demand compliance with chapter 766. No such motion has been filed in this case, and there is nothing in this record to suggest that the plaintiff has not appropriately filed a standard negligence action for conduct not involving medical treatment or service.
Writ denied.
FRANK, A.C.J., and PARKER, J., concur.
NOTES
[1] We have recently lamented the difficulty of interpreting chapter 766 because the chapter lacks comprehensive definitions. See Catron v. Roger Bohn, D.C., P.A., 580 So.2d 814 (Fla. 2d DCA 1991). This case presents similar difficulties.