783 So.2d 1108 (2001)
INTEGRATED HEALTH CARE SERVICES, INC.; Rikad Properties, Inc., authorized to operate Integrated Health Services of St. Petersburg; Bon Secours Health System, Inc.; Bon Secours Maria Manor Nursing Care Center, Inc., authorized to operate Bon Secours Maria Manor Nursing Center, a/k/a Bon Secours Maria Manor Nursing Care Center, a/k/a Bon Secours Maria Manor Nursing Facility, Petitioners,
v.
Pauline LANG-REDWAY, as Personal Representative of the Estate of Albert W. Redway, Deceased, Respondent.
No. 2D00-2905.
District Court of Appeal of Florida, Second District.
March 9, 2001.
Andrew R. McCumber and Albert J. Ferrera of Quintairos, McCumber, Prieto & Wood, P.A., Tampa; and Kendra D. Presswood of Law Office of Kendra D. Presswood, P.A., Bradenton, for Petitioners.
Susan B. Morrison and Amy J. Quezon of Wilkes & McHugh, P.A., Tampa, for Respondent.
ALTENBERND, Judge.
The petitioners, defendants in an action filed pursuant to section 400.022, Florida Statutes (1997), seek a writ of certiorari requiring the plaintiff, Pauline *1109 Lang-Redway, as personal representative of the Estate of Albert W. Redway, to comply with the presuit conditions of chapter 766, Florida Statutes (1997), prior to commencing an action in circuit court. We deny the writ. In an effort to clarify our ruling in NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991), we hold that a plaintiff who chooses to allege only a statutory claim under section 400.022 and does not also allege a common law claim for medical negligence is not required to comply with the presuit requirements of section 766.106, Florida Statutes (1997). Although there may be some overlap between the statutory right to "receive adequate and appropriate health care" and the common law claim for medical negligence, we conclude that the presuit requirements of chapter 766 must be narrowly construed to apply only to common law medical negligence claims and not to the separate statutory rights created by chapter 400. Compare § 400.022(1)(l), Fla. Stat. (1997), with § 766.102(1), Fla. Stat. (1997). If the legislature wishes to establish additional presuit requirements for nursing home claims under section 400.022(1)(l), it must create a procedure that expressly applies to these statutory claims.
Our record contains little more than the complaint, a motion to dismiss, the legal arguments presented to the trial court, and the order denying the motion to dismiss. The complaint alleges that, from October 1997 to February 1998, Mr. Redway was a resident at an Integrated Health Services nursing home. Immediately thereafter, he resided at the Bon Secours Maria Manor until his death in April 1998. Mr. Redway allegedly suffered from pressure sores at both nursing homes and ultimately had his left leg and his right big toe amputated. The complaint alleges violations of Mr. Redway's rights as a nursing home resident exclusively under section 400.022. It includes a claim for wrongful death and, in the alternative, a claim for damages if the defendant's negligence did not cause Mr. Redway's death. However, both claims are based upon a violation of a statutory right instead of a common law right. The six-count complaint does not name or identify any physician or other "health care provider" as a defendant. See § 766.102(1), Fla. Stat. (1997) (citing § 768.50(2)(b), Fla. Stat. (1985)[1]). Although the complaint alleges that Mr. Redway did not receive adequate and appropriate health care at the facilities as a statutory claim under section 400.022(1)(l), the plaintiff does not allege *1110 any common law theory attempting to make the defendants vicariously liable for a breach of a professional standard of care by a health care provider.
There is no dispute that the plaintiff complied with the presuit conditions contained in section 400.023(4), Florida Statutes (1997). The defendants contend, however, that the plaintiff must also comply with the more elaborate presuit requirements in section 766.106, Florida Statutes (1997).[2] The trial court denied the motion to dismiss, ruling that a personal representative in this type of lawsuit does not need to comply with section 766.106 "under any circumstances." Such a ruling is subject to certiorari review. See Pearlstein v. Malunney, 500 So.2d 585 (Fla. 2d DCA 1986), review denied, 511 So.2d 299 (Fla.1987); Central Fla. Reg'l Hosp. v. Hill, 721 So.2d 404 (Fla. 5th DCA 1998).
We cannot predict with certainty that the presuit conditions of chapter 766 will never apply in this type of suit. In this case, we rule merely that the presuit conditions of section 766.106 have no application to this complaint. Amendments the legislature made to section 400.023 in 1993, however, make it likely the presuit requirements of chapter 766 will not apply in most, if not all, cases in which the plaintiff's theory is limited exclusively to a violation of rights under chapter 400. See ch. 93-217, § 4, Laws of Fla.
In cases involving vicarious liability of nursing homes for the actions of their employees, determining whether the presuit requirements of chapter 766 are invoked has been a difficult task for the judiciary. See Weinstock v. Groth, 629 So.2d 835 (Fla.1993); NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991); Liles v. P.I.A. Medfield, Inc., 681 So.2d 711 (Fla. 2d DCA 1995). In general, a plaintiff must comply with these conditions if it seeks to make a defendant vicariously liable for the actions of a health care provider under the medical negligence standard of care set forth in section 766.102(1). See Weinstock, 629 So.2d at 838; Lake Shore Hosp., Inc. v. Clarke, 768 So.2d 1251 (Fla. 1st DCA 2000). This complaint does not seek vicarious liability for the actions of a health care provider under a medical negligence standard.
The defendants' arguments in this case are based, in part, upon a misunderstanding of dicta contained in NME Properties. In that case, we suggested that a nursing home could be liable under a professional standard of care for the actions of a licensed nurse. See NME Properties, 590 So.2d at 441. Such a nurse is a "health care provider" for the purposes of section 766.102(1), and we continue to believe that a nursing home could be liable, on a common law claim, for the actions of such a licensed nurse. Thus, if a complaint contained both a count alleging a violation of chapter 400 and a separate claim for professional malpractice under the common law, the presuit requirements of chapter 766 would probably apply to the lawsuit.
The defendants misread NME Properties as requiring compliance with the presuit requirements of chapter 766 when a plaintiff alleges only a breach of the statutory "right to receive adequate and appropriate health care and protective and support services" under section 400.022(1)(l). For several reasons, we reject such a requirement.
First, a nursing home provides "health care and protective and support services" to its residents using a large staff comprised of both licensed and unlicensed employees. Attempting to extract the "medical care and services" aspect of any such *1111 claim for presuit review under section 766.106 seems largely unworkable. When chapter 766 is read in its entirety, there is nothing to suggest that the legislature intends to intertwine this chapter with the similar, but separate, rights and requirements in chapter 400.
Second, the same year the supreme court decided Weinstock, the legislature amended section 400.023 implying that a complaint filed exclusively under chapter 400 is not intended to invoke the presuit conditions of chapter 766. See ch. 93-217, § 4, Laws of Fla. The amendment created a separate presuit investigatory requirement for cases under chapter 400. See § 400.023(4). A claimant now must conduct an investigation that includes a review by a licensed physician or registered nurse prior to filing any complaint. The complaint must attach a verified statement from that reviewer.
Moreover, the legislature added section 400.023(3), which states:
A licensee shall not be liable for the medical negligence of any physician rendering care or treatment to the resident except for the services of a medical director as required in this part. Nothing in this subsection shall be construed to protect a licensee from liability for failure to provide a resident with appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff.
Thus, chapter 400 now contains significant restrictions upon the claimant's ability to allege vicarious liability for the actions of a health care provider.[3]
Finally, presuit conditions restrict a party's access to Florida's courts and limit preexisting common law rights. At least when these conditions affect common law rights, they must be strictly construed. See Kukral v. Mekras, 679 So.2d 278 (Fla. 1996); Community Blood Ctrs. of S. Fla., Inc. v. Damiano, 697 So.2d 948 (Fla. 4th DCA 1997); Patino v. Einhorn, 670 So.2d 1179 (Fla. 3d DCA 1996). In this case, the statutory rights created in chapter 400 are not common law rights. Florida's policies favoring access to courts, however, weigh against interpreting the presuit conditions in chapter 766 to regulate statutory rights not mentioned in chapter 766. Nothing in section 766.106 compels this court to read that statute in an expansive manner to include claims filed under section 400.022(1)(l). The legislature has clearly attempted to restrict the circumstances in which a resident of a nursing home can file an action against the nursing home alleging a violation of a medical negligence standard of care under chapter 766 and has created a separate presuit investigation for cases that are governed by chapter 400. The plaintiff complied with the only presuit conditions expressly mandated by the legislature for this lawsuit.
We recognize that the application of the presuit conditions in chapter 766 to claims filed under chapter 400 has been a difficult issue of statewide concern. We would not wish to cause a plaintiff to suffer prejudice by relying upon this case if the Florida Supreme Court were later to disagree with our analysis. Accordingly, we certify the *1112 following question of great public importance:
IF A PLAINTIFF FILES A LAWSUIT SEEKING TO ENFORCE ONLY THOSE RIGHTS ENUMERATED IN SECTION 400.022, MUST THE PLAINTIFF COMPLY WITH THE PRESUIT CONDITIONS IN SECTION 766.106?
The trial court did not depart from the essential requirements of the law. On the contrary, the Fourth District's decision in First Healthcare Corp. v. Hamilton, 740 So.2d 1189 (Fla. 4th DCA 1999), directly supports its decision. Accordingly, the petition is denied.
PARKER, A.C.J., and SALCINES, J., concur.
NOTES
[1] The definition in this long-repealed section dealt with collateral sources of indemnity. Even though this definition can no longer be located within the Florida Statutes, it survives by virtue of the reference to this defunct statute in section 766.102(1), Florida Statutes (1997). Subsection 768.50(2)(b) provided:

"Health care provider" means hospitals licensed under chapter 395; physicians licensed under chapter 458; osteopaths licensed under chapter 459; podiatrists licensed under chapter 461; dentists licensed under chapter 466; chiropractors licensed under chapter 460; naturopaths licensed under chapter 462; nurses licensed under chapter 464; clinical laboratories registered under chapter 483; physicians' assistants certified under chapter 458; physical therapists and physical therapist assistants licensed under chapter 486; health maintenance organizations certified under part II of chapter 641; ambulatory surgical centers as defined in paragraph (c); blood banks, plasma centers, industrial clinics, and renal dialysis facilities; or professional associations, partnerships, corporations, joint ventures, or other associations for professional activity by health care providers.
§ 768.50(2)(b), Fla. Stat. (1985). This definition conflicts, to some extent, with section 766.101(1)(b), Florida Statutes (1997), which has a different definition of "health care provider."
[2] See also § 766. 203, Fla. Stat. (1997).
[3] In prior cases, we have recognized that a plaintiff who attempts to avoid the presuit requirements of chapter 766 by alleging simple negligence may not be entitled to rely upon the type of expert evidence and jury instructions used in a common law medical malpractice lawsuit. See Feifer v. Galen of Fla., Inc., 685 So.2d 882, 885 (Fla. 2d DCA 1996). It is at least arguable that a plaintiff who presents a claim exclusively under chapter 400 may not be entitled to present the same evidence or receive the same instructions that would be available in a medical malpractice lawsuit. Thus, there may still be reasons why a plaintiff would choose to present both a statutory claim and a common law claim. We have no need to resolve that complex issue today.