840 So.2d 974 (2002)
INTEGRATED HEALTH CARE SERVICES, INC., et al., Petitioners,
v.
Pauline LANG-REDWAY, etc., Respondent.
No. SC01-792.
Supreme Court of Florida.
December 12, 2002.
Rehearing Denied March 13, 2003.
*975 Scott A. Mager and Gary S. Gaffney of Mager & Associates, P.A., Fort Lauderdale, Florida; and Andrew R. McCumber and Edward Carlos Prieto of Quintairos, McCumber, Prieto & Wood, P.A., Miami, FL, for Petitioners.
Susan B. Morrison of Wilkes & McHugh, P.A., Tampa, FL, for Respondent.
SHAW, J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
If a plaintiff files a lawsuit seeking to enforce only those rights enumerated in section 400.022, must the plaintiff comply with the presuit conditions in section 766.106?
Integrated Health Care Services, Inc. v. Lang-Redway, 783 So.2d 1108, 1112 (Fla. 2d DCA 2001). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

FACTS
From October 1997 to February 1998, Albert Redway was a resident at an Integrated Health Services ("IHS") nursing home. Immediately thereafter, he resided at the Bon Secours Maria Manor ("Bon Secours") until his death in April of 1998. Pauline Lang-Redway, the personal representative for the estate of Albert Redway, sued IHS and Bon Secours, alleging that both nursing homes violated Redway's statutory rights as provided under section 400.022, Florida Statutes (1997). Relative to defendant Bon Secours,[1] the complaint alleged that Bon Secours violated section 400.022 when it failed to (1) assure that Redway received adequate health care and support services, (2) prevent his pressure sores and treat such sores after they occurred, (3) maintain accurate medical or clinical records including its failure to adequately document Redway's injuries, (4) protect him from unexplained injuries and prevent him from falling at the facility, (5) adequately monitor his nutritional intake, (6) adequately monitor significant signs and symptoms of infection, and (7) train, supervise, and retain a proper staff. The complaint specifically stated that it was founded on duties imposed by section 400.022.
The defendants moved to dismiss the complaint on several grounds, including the allegation that despite the fact that the plaintiff had fulfilled the presuit requirements under section 400.023(4), she had failed to fulfill the presuit requirements under chapter 766, Florida Statutes (1997)a necessary step before bringing a medical negligence action. The trial court denied the motion to dismiss, and Bon Secours appealed. The Second District Court of Appeal affirmed, noting that:
The complaint alleges violations of Mr. Redway's rights as a nursing home resident exclusively under section 400.022. It includes a claim for wrongful death and, in the alternative, a claim for damages if the defendant's negligence did not cause Mr. Redway's death. However, both claims are based upon a violation of a statutory right instead of a common law right. The six-count complaint does not name or identify any physician or other "health care provider" as a defendant. See § 766.102(1), Fla. Stat. (1997) (citing § 768.50(2)(b), Fla. Stat. (1985)). Although the complaint alleges that Mr. Redway did not receive adequate and appropriate health care at the facilities as a statutory claim under section 400.022(1)(l), the plaintiff *976 does not allege any common law theory attempting to make the defendants vicariously liable for a breach of a professional standard of care by a health care provider.
. . . .
In cases involving vicarious liability of nursing homes for the actions of their employees, determining whether the presuit requirements of chapter 766 are invoked has been a difficult task for the judiciary. See Weinstock v. Groth, 629 So.2d 835 (Fla.1993); NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991); Liles v. P.I.A. Medfield, Inc., 681 So.2d 711 (Fla. 2d DCA 1995). In general, a plaintiff must comply with these conditions if it seeks to make a defendant vicariously liable for the actions of a health care provider under the medical negligence standard of care set forth in section 766.102(1). See Weinstock, 629 So.2d at 838; Lake Shore Hosp., Inc. v. Clarke, 768 So.2d 1251 (Fla. 1st DCA 2000). This complaint does not seek vicarious liability for the actions of a health care provider under a medical negligence standard.
The defendants' arguments in this case are based, in part, upon a misunderstanding of dicta contained in NME Properties. In that case, we suggested that a nursing home could be liable under a professional standard of care for the actions of a licensed nurse. See NME Properties, 590 So.2d at 441. Such a nurse is a "health care provider" for the purposes of section 766.102(1), and we continue to believe that a nursing home could be liable, on a common law claim, for the actions of such a licensed nurse. Thus, if a complaint contained both a count alleging a violation of chapter 400 and a separate claim for professional malpractice under the common law, the presuit requirements of chapter 766 would probably apply to the lawsuit.
The defendants misread NME Properties as requiring compliance with the presuit requirements of chapter 766 when a plaintiff alleges only a breach of the statutory "right to receive adequate and appropriate health care and protective and support services" under section 400.022(1)(l).... [W]e reject such a requirement.
Integrated Health Care Services, Inc. v. Lang-Redway, 783 So.2d 1108, 1109-10 (Fla. 2d DCA 2001) (footnote omitted). The district court of appeal then recognized that this issue (i.e., whether the presuit conditions in chapter 766 apply to claims filed under chapter 400) has been a difficult issue of statewide concern and, accordingly, certified the above question as one of great public importance.

DISCUSSION
Stated simply, the issue presented in this case is whether a plaintiff alleging that a nursing home violated its statutory duty to provide adequate and appropriate health care must comply with two separate presuit requirements. Before answering this question, we first examine the relevant statutory provisions of chapter 766 and chapter 400, Florida Statutes (1997). Chapter 766 provides certain statutory prerequisites to the filing of a lawsuit involving a medical malpractice claim while chapter 400 sets forth statutory prerequisites for filing a suit against a nursing home.

CHAPTER 766
In 1988, the Legislature made explicit findings, recognizing that medical malpractice claims resulted in increased medical care costs for most patients and prevented some physicians from being able to obtain malpractice insurance. In an attempt to alleviate these problems, the Legislature *977 structured a statutory scheme that would encourage the early settlement of meritorious claims while screening out frivolous claims. See ch. 88-1, § 48, at 164, Laws of Fla.
Pursuant to section 766.203(1), presuit investigation requirements apply to all medical negligence claims, a term which is defined as "medical malpractice, whether grounded in tort or in contract." § 766.202(6), Fla. Stat. (1997). The claimant bringing such an action must investigate and corroborate that there are reasonable grounds to believe that all named defendants were negligent in the care and treatment and that such negligence resulted in the claimant's injury:
(1) Presuit investigation of medical negligence claims and defenses pursuant to this section and ss. 766.204-766.206 shall apply to all medical negligence, including dental negligence, claims and defenses....
(2) Prior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
§ 766.203(1)-(2), Fla. Stat. (1997). After the claimant completes the presuit investigation, she or he must then notify each "prospective defendant"[2] of the intent to initiate litigation prior to filing a claim for medical malpractice. See § 766.106(2)(3)(a), Fla. Stat. (1997).[3] If the defendant is a licensed physician, osteopath, chiropractor, podiatrist, or dentist, the plaintiff must also notify the Department of Business and Professional Regulation. After the presuit investigation is complete, the parties may elect to enter voluntary binding arbitration pursuant to sections 766.207-766.212.
In reviewing chapter 766, courts have been plagued by a lack of comprehensive definitions,[4] including a definitive statement *978 as to who are considered "health care providers" covered by chapter 766's presuit requirements. For example, throughout chapter 766, the term "health care provider" has three different definitions, the broadest of which defines "health care provider" as
hospitals licensed under chapter 395; physicians licensed under chapter 458; osteopaths licensed under chapter 459; podiatrists licensed under chapter 461; dentists licensed under chapter 466; chiropractors licensed under chapter 460; naturopaths licensed under chapter 462; nurses licensed under chapter 464; clinical laboratories registered under chapter 483; physicians' assistants certified under chapter 458; physical therapists and physical therapist assistants licensed under chapter 486; health maintenance organizations certificated under part II of chapter 641; ambulatory surgical centers as defined in paragraph (c); blood banks, plasma centers, industrial clinics, and renal dialysis facilities; or professional associations, partnerships, corporations, joint ventures, or other associations for professional activity by health care providers.
§ 768.50(2)(b), Fla. Stat. (1985) (emphasis added).
In Weinstock v. Groth, 629 So.2d 835 (Fla.1993), this Court reviewed the issue of which health care providers were covered by the presuit notice requirements in chapter 766. The plaintiff filed a negligence action against Weinstock, a clinical psychologist, when Weinstock allegedly entered into an affair with the plaintiff's husband while still counseling the plaintiff relative to marital problems. Id. at 836. Weinstock filed a motion to dismiss, asserting that since the plaintiff was bringing a malpractice action against her, she had to comply with the presuit requirements of chapter 766. After noting that a psychologist is not defined in chapter 766 as a "health care provider," the Court agreed that this indicated a legislative intent that psychologists should not be classified as such. Id. at 837. The Court concluded that the proper test for determining whether a defendant is entitled to the presuit requirement of notice under section 766.106(2) is "whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1)."[5]Id. at 838. Lang-Redway's cause of action arose in 1997 and is governed by section 766.102(1), which for the purpose of defining "health care provider" incorporates a cross-reference to section 768.50(2)(b), which was repealed in 1986. However, the repeal of the cross-referenced statute does not render the descriptive reference inapplicable. Instead, this Court must look to the language of section 768.50(2)(b) at the time that the specific cross-reference was enacted.[6]See Overstreet v. Blum, 227 So.2d 197, 198 (Fla.1969) ("It is proper for a statute to adopt all or a part of another *979 statute by specific and descriptive reference thereto. When this is done the adoption takes the statute as it exists at that time.") Thus by reference, a "health care provider" includes hospitals, physicians, podiatrists, dentists, chiropractors, naturopaths, nurses, clinical laboratories, physicians' assistants, physical therapists and physical therapist assistants, health maintenance organizations, and associations for professional activity by health care providers, as well as certain ambulatory surgical centers, blood banks, plasma centers, industrial clinics, and renal dialysis facilities.

CHAPTER 400
Chapter 400, on the other hand, provides for the development and enforcement of basic standards of care imposed upon nursing homes. Section 400.022 creates twenty-two unique statutory requirements applicable to nursing homes. One of these requirements guarantees nursing home residents:

The right to receive adequate and appropriate health care and protective and support services, including social services; mental health services, if available; planned recreational activities; and therapeutic and rehabilitative services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules as adopted by the agency.

§ 400.022(1)(l), Fla. Stat. (1997) (emphasis added). If these rights are violated, a resident may file an action pursuant to section 400.023, which provides in part:
"Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation." § 400.023(1), Fla. Stat. (1997). After this Court decided Weinstock,[7] the Legislature amended section 400.023 to add the following subsections:
(3) A licensee shall not be liable for the medical negligence of any physician rendering care or treatment to the resident except for the services of a medical director as required in this part. Nothing in this subsection shall be construed to protect a licensee from liability for failure to provide a resident with appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff.

(4) Claimants alleging a deprivation or infringement of adequate and appropriate health care pursuant to s. 400.022(1)(k) which resulted in personal injury to or the death of a resident shall conduct an investigation which shall include a review by a licensed physician or registered nurse familiar with the standard of nursing care for nursing home residents pursuant to this part. Any complaint alleging such a deprivation or infringement shall be accompanied by a verified statement from the reviewer that there exists reason to believe that a deprivation or infringement occurred during the resident's stay at the nursing home. Such opinion shall be based on records or other information available at the time that suit is filed. Failure to provide records in accordance with the *980 requirements of this chapter shall waive the requirement of the verified statement.
(5) For the purposes of this section, punitive damages may be awarded for conduct which is willful, wanton, gross or flagrant, reckless, or consciously indifferent to the rights of the resident.
§ 400.023, Fla. Stat. (1997) (emphasis added).

ANALYSIS
In the current case, each count of the plaintiff's complaint alleged that the nursing home failed to provide for the degree of care mandated by section 400.022. Since this claim relies upon the right to receive adequate health care and services from the nursing home, the plaintiff was required to (and in fact did) follow the presuit requirements within chapter 400. Bon Secours asserts that the plaintiff is alleging that the defendant's licensed nurses committed acts of medical negligence, and hence the plaintiff must abide by the separate presuit conditions of chapter 766 before Bon Secours can be vicariously liable for the medical malpractice of a member of its nursing staff. We disagree.
As we have previously held, in order to determine whether the presuit requirements of chapter 766 apply, we look to whether the plaintiff must rely upon the medical negligence standard of care as set forth in section 766.102(1). In this case, the plaintiff is filing an action against the nursing home based solely upon the violation of the statutory obligations imposed by section 400.022. As section 400.022(1)(l) provides its own standard of care,[8] the medical negligence standard of care and the corresponding presuit requirements of chapter 766 are inapplicable. Moreover, section 400.023 clearly demonstrates that the Legislature intended a nursing home to be liable for the "failure to provide a resident with appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff." § 400.023(3), Fla. Stat. (1997). Accordingly, we do not find that the plaintiff has pled a medical malpractice cause of action against a health care provider which would require her to abide by the presuit requirements of chapter 766.[9]
Bon Secours' argument that the Legislature intended plaintiffs to abide by two separate presuit requirements is clearly at odds with the Legislature's purpose in promulgating sections 400.022 and 400.023. It is the clear legislative intent to provide nursing home residents with a statutorily imposed standard of care, protection, and support services. As this Court has reiterated on numerous occasions, "when possible the presuit notice and screening statute should be construed in a manner that favors access to courts." Patry v. Capps, 633 So.2d 9, 13 (Fla.1994).
Nursing homes employ numerous types of employees to care for their residents, including licensed nurses, aides, dieticians, and housekeepers. In this case, for example, the plaintiff contends that the nursing home denied Redway his right to appropriate health care by failing to protect him from falling and from developing pressure sores. These failures may have been *981 caused by the nursing staff, by the nursing home in not having adequate staff, by the negligence of aides or other workers, or by a combination of the above.
For the above-noted reasons, we approve the district court's decision and answer the certified question in the negative.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, and QUINCE, JJ., and HARDING, Senior Justice, concur.
LEWIS, J., concurs in result only.
NOTES
[1] Bon Secours is the only defendant involved in the petition before this Court.
[2] The term "prospective defendant" is not defined in the statute.
[3] Section 766.106 provides in relevant part:

(2) After completion of presuit investigation pursuant to s. 766.203 and prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant and, if any prospective defendant is a health care provider licensed under chapter 458 [relating to physicians], chapter 459 [relating to osteopaths], chapter 460 [relating to chiropractors], chapter 461 [relating to podiatrists], or chapter 466 [relating to dentists], the Department of Business and Professional Regulation by certified mail, return receipt requested, of intent to initiate litigation for medical malpractice....
(3)(a) No suit may be filed for a period of 90 days after notice is mailed to any prospective defendant. During the 90-day period, the prospective defendant's insurer or self-insurer shall conduct a review to determine the liability of the defendant. Each insurer or self-insurer shall have a procedure for the prompt investigation, review, and evaluation of claims during the 90-day period.
§ 766.106(2)-(3)(a), Fla. Stat. (1997).
[4] See NME Properties, Inc. v. McCullough, 590 So.2d 439, 440 n. 1 (Fla. 2d DCA 1991) ("We have recently lamented the difficulty of interpreting chapter 766 because the chapter lacks comprehensive definitions.").
[5] Specifically, section 766.102(1), Florida Statutes (1997), defines this standard as follows:

In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
[6] Ch. 77-64, §§ 7-8, at 110-11, Laws of Fla.
[7] Although the decision in Weinstock did not involve the application of chapter 400, within the decision, this Court relied upon and adopted the reasoning of NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991), which held "although a nursing home is not a health care provider as defined under chapter 766, the notice provisions of the Act apply to a negligence action against a nursing home if the professional medical negligence standard of care set forth in section 766.102 applied to the active tortfeasorthe agent or employee of the nursing home." Weinstock, 629 So.2d at 837 (citing McCullough, 590 So.2d at 441).
[8] See § 400.022(1)(l), Fla. Stat. (1997) (guaranteeing "[t]he right to receive adequate and appropriate health care ... services ... consistent with ... established and recognized practice standards within the community, and with rules as adopted by the agency").
[9] We limit this holding to those cases where the plaintiff has limited his or her cause of action to violations of section 400.022.