983 So.2d 717 (2008)
Susan Rachel BOHANNON, as Personal Representative of the Estate of Scott Allen Gould, deceased, W. Jay Gould, father, W. Jay Gould, Jr., brother, and Matthew A. Gould, brother, Appellants,
v.
SHANDS TEACHING HOSPITAL AND CLINICS, INC., a Florida corporation, Appellee.
No. 1D06-6594.
District Court of Appeal of Florida, First District.
June 10, 2008.
Roy L. Glass, of Law Offices of Roy L. Glass, P.A., St. Petersburg; and Thomas S. Edwards, Jr., and Jennifer K. Millis, of Peek, Cobb & Edwards, P.A., Jacksonville, for Appellants.
Susan L. Kelsey of Anchors Smith Grimsley, Tallahassee; William A. Bell, General Counsel, Florida Hospital Association, Tallahassee; and Gail Leverett Parenti of Parenti & Parenti, P.A., Miami, for Appellee.
BARFIELD, J.
This is an appeal of an order dismissing with prejudice an amended complaint seeking, inter alia, damages for violation of the "Adult Protective Services Act," *718 chapter 415, Florida Statutes. With respect to the chapter 415 claim, the amended complaint alleged that Scott Allen Gould entered the defendant hospital for transplant surgery, was improperly intubated post-surgery, and as a result, "developed profound encephalopathy and persistent vegetative state." Seventy-nine days thereafter, the family elected to terminate life support, expecting an amicable settlement with the hospital. When their expectations were not met, they filed suit against the hospital.
Because Gould, who was receiving Social Security disability benefits for diabetes and nephrosclerosis, was not married and had no children, the available relief under chapter 766 (Medical Malpractice) and chapter 768 (Wrongful Death Act) was limited to medical expenses, funeral expenses, and loss of prospective net accumulations of the estate. The claims in the amended complaint did not mention chapters 766 and 768, but were instead styled as "medical abuse and neglect resulting in wrongful death" (citing chapter 415), breach of fiduciary duty, reckless infliction of emotional distress, and unjust enrichment. We address only the chapter 415 claim, finding the issues involving the other claims to be without merit.

ADULT PROTECTIVE SERVICES ACT
Chapter 415 was enacted to protect "vulnerable adults" from "abuse, neglect, and exploitation" by "caregivers," as those terms are defined in the Act. It provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as for protective services interventions when the vulnerable adult lacks the capacity to consent. Section 415.102 provides definitions, including the following (emphasis supplied):
"Vulnerable adult" means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, long-term physical, or developmental disability or dysfunctioning, or brain damage, or the infirmities of aging.
"Abuse" means any willful act or threatened act by a caregiver that causes or is likely to cause significant impairment to a vulnerable adult's physical, mental, or emotional health. . . .
"Neglect" means the failure or omission on the part of the caregiver to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult, including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, that a prudent person would consider essential for the well-being of a vulnerable adult. . . .
"Exploitation" means [that] a person who . . . [s]tands in a position of trust and confidence with a vulnerable adult . . . knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult . . .
"Caregiver" means a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists. "Caregiver" includes, but is not limited to, relatives, household members, *719 guardians, neighbors, and employees and volunteers of facilities as defined in subsection (8). . . .
"Facility" means any location providing day or residential care or treatment for vulnerable adults. The term "facility" may include, but is not limited to, any hospital, state institution, nursing home, assisted living facility, adult family-care home, adult day care center, group home, or mental health treatment center.
"Alleged perpetrator" means a person who has been named by a reporter as the person responsible for abusing, neglecting, or exploiting a vulnerable adult.
Section 415.1111 provides that "[a] vulnerable adult who has been abused, neglected, or exploited as specified in this chapter has a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, or exploitation" (emphasis supplied). The action may be brought by the vulnerable adult or his guardian, by a person or organization acting for the vulnerable adult with the consent of the vulnerable adult or his guardian, or by the personal representative of the estate of a deceased victim "without regard to whether the cause of death resulted from the abuse, neglect, or exploitation." This section states that its remedies "are in addition to and cumulative with other legal and administrative remedies available to a vulnerable adult."

AMENDED COMPLAINT
With respect to the chapter 415 claim, the amended complaint alleged that Gould was a "vulnerable adult" as defined in Section 415.102(26), stating that he was "a person older that 18 years of age whose ability to perform the normal activities of daily living was, prior to his death, injured due to mental, emotional or physical disability or dysfunctioning." It alleged that the hospital and its employees were "entrusted with, or assumed the responsibility for, frequent and regular care of or services to [Gould] with the commitment, agreement or understanding with him that a caregivers [sic] role existed as the term is defined in Section 415.103(4)." It alleged that the hospital had "provided [Gould] with day or residential care or treatment and is a `facility' as that term is defined by Section 415.102(8), Florida Statutes." It further alleged (emphasis supplied):
At all times material hereto Defendant had a non-delegable duty to provide to the deceased, Scott Allen Gould, a patient placed entirely and exclusively in their [sic] care, the knowledge, skill and care which is generally used in similar cases and circumstances by healthcare providers in communities having similar medical standards and available facilities, or that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

The amended complaint certified that "a reasonable investigation has been made giving rise to a good-faith belief that grounds exist for this action," attached a medical doctor's affidavit, and asserted that "[a]ll conditions precedent to bring this action have either been performed, excused or waived."
Count I alleged that the hospital's conduct constituted "abuse" as defined by Section 415.102(1), as a result of which Gould "suffered bodily injury and resulting pain and suffering, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment and death, June 18, 2004," and that his estate "lost *720 net accumulations that Scott Allen Gould would have been able to accumulate in future wage earning and services, medical bills and funeral expenses."

MOTIONS TO DISMISS
The hospital filed motions to dismiss the amended complaint, asserting that chapter 415 "was not enacted to impose civil liability for medical negligence beyond that already permitted under Florida's medical malpractice and wrongful death statutes, especially not against acute care hospitals which intend only to provide limited short term surgical care to patients, and which never intended to provide day or residential care to a vulnerable adult." It argued that chapter 415 must be interpreted so as to reconcile it with chapters 766 and 768, which "traditionally govern" actions like the one at issue, and that the protections of chapters 766 and 768 "are lost if Plaintiffs' claim is viable under Chapter 415 instead of Chapter[s] 766 and 768." It argued that the statutes are reconciled "if Chapter 415 is not intended to apply to medical negligence of the type described in Count I of the Amended Complaint," asserting that the definitions of chapter 415 so indicate, and that the nursing home statute (chapter 400) "specifically provides that Chapter 766 does not apply to actions brought under that Chapter," but there is no similar provision in chapter 415 because "it is clear that the scopes and applications of Chapters 415 and 766 are separate," citing the legislative history of chapter 415, which it asserted was "limited to long term care facilities, which Shands is not alleged to be."
The motions to dismiss argued that the amended complaint failed to plead the elements of a chapter 415 action as a matter of law, asserting that the allegation that the hospital "accepted [Gould] for a simultaneous right kidney/pancreas transplant operative procedure" failed to establish the facts necessary to show an agreement to assume "frequent and regular care," and that "general conclusory terms unsupported by, or contradictory to, ultimate facts pleaded cannot support a cause of action."
At the hearing on the motions to dismiss, the trial judge found that "this is clearly a medical malpractice case" and "not a case that involves a vulnerable person and a caregiver." He stated that he would dismiss the case, but would grant the plaintiffs "30 days in which to file an amended complaint on a cause of action arising out of medical malpractice by the estate for funeral expenses, last medical expenses, and the loss of accumulation. . . ." The plaintiffs/appellants elected not to amend the complaint, and the trial judge entered final judgment for the hospital.

ANALYSIS
With respect to the chapter 415 claim, the parties and amici curiae have framed two main issues. The plaintiffs/appellants essentially assert that a claim arising from medical negligence may be prosecuted under chapter 415. The defendant/appellee hospital essentially asserts that an acute care hospital cannot be held liable under chapter 415. We conclude that neither position is correct.
We reject the position of the hospital and its amicus curiae because we can conceive of scenarios in which acute care hospitals might become "caregivers" of "vulnerable adults" under the chapter 415 definitions, and might then "abuse" or "neglect" those vulnerable adults. For example, once Gould became comatose, he arguably became a "vulnerable adult" as that term is defined in chapter 415, and once the hospital undertook his care in that condition for the period after the improper intubation until life support was terminated, *721 instead of sending him to a long term care facility, it arguably became a "caregiver" as that term is defined in chapter 415. If, during the period after the improper intubation and before Gould's life support was terminated, the hospital's agents or employees had intentionally "abused" or "neglected" him, as those terms are defined in chapter 415, the hospital would arguably have been subject to suit under section 415.1111, Florida Statutes. However, there are no allegations in the amended complaint that the hospital "abused" or "neglected" Gould during the period after he entered a "persistent vegetative state."
We must also reject the position of the plaintiffs/appellants and their amicus curiae. We affirm the trial judge's determination that the allegations of the amended complaint which purport to state a cause of action under section 415.1111 are clearly allegations of medical negligence. As the Florida Supreme Court noted in a somewhat similar context in Integrated Health Care Services, Inc. v. Lang-Redway, 840 So.2d 974 (Fla.2002), a plaintiff must comply with the pre-suit requirements of chapter 766 "if it seeks to make a defendant vicariously liable for the actions of a health care provider under the medical negligence standard of care set forth in section 766.102(1)." In this amended complaint, the plaintiffs/appellants sought to make the defendant/appellee hospital vicariously liable for the actions of its health care providers under a medical negligence standard of care, as is clear from the emphasized portion of the above-quoted paragraph from the amended complaint, which is identical to the medical negligence standard of care set forth in section 766.102(1), Florida Statutes.
Given the trial judge's correct determination that the allegations of the chapter 415 claim are allegations of medical negligence, we also affirm his ruling that the amended complaint failed to state a cause of action under chapter 415, which was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence. To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a "vulnerable adult" as defined by section 415.102(27), that the defendant was a "caregiver" as defined by section 415.102(4), and that the defendant committed "abuse" as defined by section 415.102(1), or "neglect" as defined by section 415.102(15), or "exploitation" as defined by section 415.102(7) with respect to the vulnerable adult. The allegations of this amended complaint, for the most part, were mere conclusions tracking the language of the statutory definitions, unsupported by facts, and are legally insufficient. See, Ellison v. City of Fort Lauderdale, 175 So.2d 198, 200 (Fla.1965); Silvers v. Drake, 188 So.2d 377 (Fla. 1st DCA 1966).
AFFIRMED.
VAN NORTWICK and PADOVANO, JJ., concur.