991 So.2d 396 (2008)
TENET SOUTH FLORIDA HEALTH SYSTEMS d/b/a North Shore Medical Center, Petitioner,
v.
Jean B. JACKSON, as Personal Representative of the Estate of Cynthia Lucas, Respondent.
No. 3D08-665.
District Court of Appeal of Florida, Third District.
September 17, 2008.
*397 Wicker, Smith, O'Hara, McCoy & Ford and Shelley H. Leinicke, Fort Lauderdale, for petitioner.
Paul Morris; Jon M. Herskowitz, Miami, for respondent.
Before SUAREZ, ROTHENBERG, and LAGOA, JJ.
SUAREZ, J.
Tenet South Florida Health Systems d/b/a North Shore Medical Center ("North Shore") petitions for a writ of certiorari to the circuit court to quash an order denying North Shore's motion to dismiss for failure to comply with Chapter 766 medical negligence presuit requirements. We have jurisdiction. See Corbo v. Garcia, 949 So.2d 366 (Fla. 2d DCA 2007) (holding that an appellate court has certiorari jurisdiction to review an order denying a motion to dismiss a complaint for failure to comply with Chapter 766 presuit requirements); Fassy v. Crowley, 884 So.2d 359 (Fla. 2d DCA 2004). We grant the petition for writ of certiorari and quash the trial court's order denying North Shore's motion to dismiss on grounds that the allegations in the complaint arise out of the failure to render medical care or services and, therefore, require Chapter 766 presuit notice.
Jean Jackson, as personal representative of the estate of her mother, Cynthia *398 Lucas, brought an action against North Shore for breach of the statutory duty of care by a healthcare provider to a vulnerable person pursuant to sections 415.101-415.113, Florida Statutes (2007), the Adult Protective Services Act. Specifically, she alleges that, on February 8, 2007, Cynthia Lucas received pre-operative care at North Shore. She was admitted to North Shore on February 15, 2007, for a carotid artery procedure and remained there until February 26, 2007, when she was transferred out of the hospital. The Complaint alleges that North Shore failed to administer proper nursing care and other medical services and was negligent by failing to perform an inpatient nursing assessment; failing to implement "latex precautions"; failing to adequately assess and monitor; failing to appreciate early implications of increasing respiratory rate and sore throat in a patient with recent neck surgery and multiple allergies; and failing to provide appropriate care and treatment. North Shore moved to dismiss the Complaint on grounds that the Complaint was not an action pursuant to Chapter 415, but was a complaint for medical malpractice pursuant to Chapter 766, Florida Statutes (2007). North Shore claimed the Complaint had to be dismissed because the plaintiff had failed to comply with the presuit screening requirements of section 766.106, Florida Statutes (2007). The trial court denied the motion to dismiss, and North Shore seeks certiorari review.
North Shore contends on review that the allegations of the Complaint constitute medical negligence by hospital personnel, that, therefore, pursuant to section 766.106, Florida Statutes (2007), presuit notice is a condition precedent to maintaining the action, and that the trial court erred in not dismissing the Complaint.
Jackson contends that she has alleged simple negligence and a claim for elder abuse, not a claim for medical negligence, and that presuit notice is not required under section 415.102(15) of the Adult Protective Services Act, which prohibits the neglect of vulnerable adults, like her mother, being cared for in a facility such as North Shore.
We do not agree with Jackson that the particular allegations of this Complaint state a claim for neglect of a vulnerable person by a caregiver pursuant to the Adult Protective Services Act, see §§ 415.101-415.113, Fla. Stat. (2007).[1] Chapter 415 was enacted to protect vulnerable adults from neglect by caregivers and specifically defines the terms caregiver and neglect as used in the statute. Based on the allegations of the Complaint, North Shore neither meets the required definition of a caregiver, nor does the Complaint allege neglect by North Shore as defined by the statute.
Pursuant to the definition of neglect, the caregiver must fail to provide the necessities which a prudent person would *399 consider essential for the well-being of a vulnerable adult or act in a careless manner resulting in injury or death.[2]
Based on the allegations of the Complaint, North Shore does not meet the Chapter 415 definition of a caregiver. The allegations in the Complaint are that Ms. Lucas was admitted to North Shore, which is a hospital, for the purpose of a surgical procedure, a right carotid endarectomy. Nowhere in the complaint is there any allegation that there existed "a commitment, agreement, or understanding ... that a caregiver role exist[ed]" between North Shore and Ms. Lucas. This is not to say that a hospital such as North Shore cannot be a caregiver pursuant to the statute. See Bohannon v. Shands Teaching Hosp. & Clinics, Inc., 983 So.2d 717 (Fla. 1st DCA 2008) (holding that there can be scenarios in which an acute care hospital might become a "caregiver" of "vulnerable adults" under the definition of Chapter 415). We state only that, based on the allegations in this Complaint, North Shore does not meet the Chapter 415 definition of a caregiver.
Even if the Complaint were to allege sufficiently that North Shore were a caregiver pursuant to Chapter 415, the claim is still one for medical malpractice and not for elder abuse. Section 766.106(1)(a) defines a claim for medical malpractice as "a claim, arising out of the rendering of, or the failure to render, medical care or services." The question in determining if a claim is a medical malpractice claim is whether the plaintiff must rely upon the medical negligence standard of care, as set forth in section 766.102(1), Florida Statutes (2007), in order to prove the case. Integrated Health Care Servs., Inc. v. Lang-Redway, 840 So.2d 974, 980 (Fla.2002). This Complaint arises out of the rendering or failure to render medical care or services. The Complaint alleges that Ms. Lucas was admitted to North Shore for a right carotid endarectomy, a medical procedure. Jackson alleges injuries during this hospitalization due to the failure to perform an inpatient nursing assessment; failure to implement "latex precautions"; failure to assess and monitor; failure to appreciate early implication of increasing respiratory rate and sore throat in a patient with recent neck surgery and multiple allergies; and failure to provide appropriate care and treatment. These are all medical care or services which the plaintiff claims were either negligently rendered or not rendered at all resulting in injury. All of these allegations can be proven only through evidence that the alleged negligent action or inaction of a health care provider, i.e., the nurse or other medical care providers, fell below the prevailing standard of care in the community for that health care provider resulting in injury. Because this is a medical negligence action, the plaintiff is required to comply with the presuit notice and 90-day investigatory period as set forth in sections 766.106(2) and 766.106(3), Florida Statutes (2007),[3]see Integrated *400 Health Care Servs., Inc. v. Lang-Redway, 840 So.2d at 974, as conditions precedent for bringing suit.[4] As such, the trial judge was incorrect in finding that presuit notice, under section 766.106(2), Florida Statutes (2007), was not required.
Petition for writ of certiorari granted.
NOTES
[1] 415.102 Definition of terms used in ss. 415.101-415.113.As used in ss. 415.101-415.113, the term:

. . . .
(15) "Neglect" means the failure or omission on the part of the caregiver or vulnerable adult to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult, including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, which a prudent person would consider essential for the well-being of a vulnerable adult. The term "neglect" also means the failure of a caregiver or vulnerable adult to make a reasonable effort to protect a vulnerable adult from abuse, neglect, or exploitation by others. "Neglect" is repeated conduct or a single incident of carelessness which produces or could reasonably be expected to result in serious physical or psychological injury or a substantial risk of death.
. . . .
[2] (4) "Caregiver" means a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists.
[3] 766.106 Notice before filing action for medical negligence; presuit screening period; offers for admission of liability and for arbitration; informal discovery; review.

. . . .
(2) PRESUIT NOTICE.
(a) After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. Notice to each prospective defendant must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, and copies of all the medical records relied upon by the expert in signing the affidavit. The requirement of providing the list of known health care providers may not serve as grounds for imposing sanctions for failure to provide presuit discovery.
[4] (3) PRESUIT INVESTIGATION BY PROSPECTIVE DEFENDANT.

(a) No suit shall be filed for a period of 90 days after notice is mailed to any prospective defendant. During the 90-day period, the prospective defendant or the defendant's insurer or self-insurer shall conduct a review as provided in s. 766.203(3) to determine the liability of the defendant. Each insurer or self-insurer shall have a procedure for the prompt investigation, review, and evaluation of claims during the 90-day period.