685 So.2d 882 (1996)
Robert FEIFER and Helen Feifer, His Wife, Appellants,
v.
GALEN OF FLORIDA, INC., d/b/a St. Petersburg General Hospital, Appellee.
No. 95-05176.
District Court of Appeal of Florida, Second District.
November 8, 1996.
*883 Vitas Lukas, St. Petersburg, and Christie D. Arkovich, Tampa, for Appellants.
Kelly K. Griffin and Daneil M. McAuliffe of Gunn, Ogden & Sullivan, P.A., Tampa, for Appellee.
CAMPBELL, Acting Chief Judge.
Appellants, Robert and Helen Feifer, challenge the dismissal of their negligence action against appellee, Galen of Florida, Inc., d/b/a St. Petersburg General Hospital, because of their failure to comply with the notice and pre-suit requirements of chapter 766, Florida Statutes (1991) that pertain to claims arising out of the rendering of, or the failure to render, medical care and services.
We reverse, concluding, as urged by appellants, that they may seek recovery from appellee based upon their claims of ordinary or simple negligence rather than claims of medical malpractice or medical negligence.
The essential and pertinent parts of appellant's Third Amended Complaint-Negligence allege as follows:
2. On or about May 6, 1993, defendant was the owner and in possession of real property and a building located at 6500 38th Avenue North, St. Petersburg, Pinellas County, Florida XXXXX-XXXX, upon which defendant operated a business, a general service hospital, open to the general public.
3. At that time, plaintiffs entered upon said property as business invitees, having been directed to go there by Mr. FEIFER's physician.
4. Plaintiff ROBERT FEIFER is elderly, suffered physical illnesses or conditions related to his age, walked in slow, shuffling steps with his hand upon the rear of his hip; he openly complained of his feelings of weakness and his hands were obviously shaking as he and plaintiff HELEN FEIFER, his wife, waited and completed various forms, all in the plain view of defendant's admission area employee or employees, none of whom were employed in any professional capacity.
5. Plaintiffs were told by defendant's admission area employee or employees that they would have to walk on their own power to the various areas of the building, all at considerable distances from the reception area and each other, down long corridors with hard floors, no handrails, and no benches or chairs for sitting or resting, with neither a wheelchair nor an escort having been provided to assist Mr. FEIFER; plaintiffs had expected that a wheelchair would be provided but, when they were told otherwise, they set out to walk to the locations on their own power.
6. The conditions of the property's corridors, as described above, constituted an unsafe passageway and a dangerously negligent condition for customers such as plaintiff, and these conditions had existed *884 for such a length of time before the incidents described herein that defendant knew or should have known of this dangerous condition.
7. After walking a great distance to the various areas of the premises to which they had been directed, plaintiffs walked back toward the reception area and Mr. FEIFER suddenly fell to the floor, suffering a broken hip and other painful and permanent and continuing bodily injuries, requiring emergency surgery, that caused Mr. FEIFER great pain and suffering, disability, disfigurement, mental anguish, loss of capacity to enjoy life, and great expenses for lengthy therapy, medical and nursing care or treatment and hospital and nursing home stays; all these injuries and losses to Mr. FEIFER are either permanent or are likely to reoccur or continue indefinitely into the future.
8. Defendant and defendant's employees owed plaintiff ROBERT FEIFER a duty to act with reasonable and prudent care so that no dangerous practice or condition would occur or exist that could injure Mr. FEIFER while upon the premises.
9. Defendant and defendant's employees breached their duty of reasonable care because they negligently failed to provide a safe passage way through said property by requiring or allowing an ailing, elderly, frail ROBERT FEIFER to walk within the corridors between the various sections or departments of the property without the benefit of common conveniences such as handrails, benches or chairs, and without the assistance of a wheelchair or an escort, despite his very obvious difficulty with walking and his weak appearance and condition; defendant and defendant's employees failed or neglected to take any such necessary, obvious and common precautions for a business of their type that repeatedly serves frail, elderly customers upon their premises.
10. Defendant and defendant's employees' failure to act with such reasonable and prudent care and knowingly or negligently allowing dangerous practices to occur and dangerous conditions to exist, were the direct and proximate causes of plaintiff ROBERT FEIFER's injuries, losses and damages.
11. Plaintiff was required to employ counsel to prosecute this action and has obligated himself to pay a reasonable attorney's fee.
We conclude that appellants clearly were attempting to allege a cause of action against appellee based upon allegations of appellee's negligence in maintaining its premises in a manner to protect its invitees from harm while on the premises.
Appellant Robert Feifer alleges he was injured as a result of a fall on appellee's premises. In appellants' response to appellee's motion to dismiss their complaint, appellants make clear the limited scope of their negligence claim against appellee, stating in that response as follows:
[D]efendant's ... argue that, because the word "care" was used in the text of the Complaint, and because the defendant corporate entity is generally considered a health care provider, that plaintiffs' cannot pursue their claim herein under an ordinary negligence cause of action but, rather, must pursue it as a medical malpractice action with all the attendant statutory conditions precedent to the filing of such a cause of action; defendant's argument is a misconstruance of the word "care" into the context of "medical care", a construction more favorable to the defendant, when the plain meaning of the word "care" in the context used was such reasonable care as any ordinary prudent person may be required by law to take to avoid injury to others, in the classic definition of the tort of negligence.
3. Plaintiffs' Complaint seeks damages for such ordinary negligence, where nonprofessional employees may have committed the alleged negligence and/or where the incident does not involve medical care.
4. The central defendants' employee or employees involved in the fact situation herein were nonprofessional employees at the entrance and in the reception area of the hospital, and the negligence complained of did not involve medical care but, rather, ordinary business procedures concerning *885 entry of a client upon a premises; this is, in essence, what would be colloquially called a "slip and fall" case which happened to occur upon the premises of a hospital, and hospitals should not be allowed to cloak themselves with the protection afforded them by categorization as a health care provider when the incident complained of involves only the most ordinary negligence.
5. Any medical treatment or care that may have occurred at times other than the occurrence of the negligence or the injury is merely incidental to the negligence alleged: failure to provide safe passage way or an escort or a wheelchair to, or to take any other reasonable precaution for, a visibly weak or impaired person entering upon the defendant's business premises.
Appellee argues that appellants' attempt to characterize their claim as one for premises liability based upon unreasonably dangerous conditions and/or practices maintained on the premises is merely an attempt to circumvent the applicability of chapter 766's present requirements by framing their claim as one for ordinary negligence. We conclude that appellee misconstrues the effect of chapter 766. It did not abolish ordinary negligence claims against those who may be in the business of providing medical care or services. If a plaintiff can successfully allege factual matters constituting ordinary negligence, he or she is not precluded from doing so. Our supreme court addressed this issue in J.B. v. Sacred Heart, Hospital of Pensacola, 635 So.2d 945 (Fla. 1994). where the court stated: "The key inquiry under the statute is whether the action `aris[es] out of any medical, dental, or surgical diagnosis, treatment, or care.' If there is doubt as to the applicability of such a statute, the question is generally resolved in favor of the claimant." Moreover, the fact "[t]hat conduct occurs in a medical setting does not necessarily mean it involves medical malpractice." Robinson v. West Florida, Regional Medical Center, 675 So.2d 226 (Fla. 1st DCA 1996).
We recently considered the difference between a medical malpractice action and an ordinary negligence action when we considered the proper statute of limitations to apply in Kelley v. Rice, 670 So.2d 1094 (Fla. 2d DCA 1996). We concluded there that although a defendant in a negligence action may be a medical care provider, that medical care provider does not escape liability for its acts of ordinary negligence merely because it is otherwise engaged in providing medical care.
We considered the same issue in NME Properties, Inc. v. McCullough, 590 So.2d 439, 440 (Fla. 2d DCA 1991). There, in regard to a nursing home (East Manor), we said:
Although a nursing home is not itself a health care provider for purposes of section 766.102, it may be vicariously liable under that higher standard of care for the acts of some of its agents or employees. For example, East Manor probably employs nurses who are licensed under chapter 464. Under respondeat superior, East Manor may be liable under the higher professional standard of care when its agent, who is actively involved in the incident, is a health care provider rendering medical care or service. On the other hand, East Manor may be liable under an ordinary negligence standard of care when other nonprofessional employees commit alleged negligence, or when an incident does not involve medical care.

(Emphasis supplied.)
We would caution plaintiffs in those actions where they allege that a medical care provider has committed an act of ordinary negligence that they will not be allowed, in presenting their case, to slide back and forth between the standards of care and proof required to show ordinary negligence as opposed to medical negligence.
Reversed and remanded.
SCHOONOVER and ALTENBERND, JJ., concur.