DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**STEVE BUCK,** as Personal Representative of the Estate of JOAN
BROWN, deceased,
Appellant,

v.

**COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD,** d/b/a
**WESTSIDE REGIONAL MEDICAL CENTER,** a Florida company,
Appellee.

No. 4D13-2165

[September 10, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale Ross, Judge; L.T. Case No. 12-027829 (08).

Jonathan M. Streisfeld and Scott J. Weiselberg of Kopelowitz Ostrow Ferguson Weiselberg Keechl, Fort Lauderdale, for appellant.

Fann & Petruccelli, P.A., Fort Lauderdale, and Mark Hicks, Dinah Stein, and Shannon Debus-Horn of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, for appellee.

FORST, J.

The trial court dismissed the complaint filed by Appellant Steve Buck based on his failure to comply with the pre-suit requirements of Chapter 766, Florida Statutes (2012). Appellant argues the trial court erred by applying Chapter 766 to his complaint because the complaint stated a claim of simple negligence, as opposed to medical negligence. We disagree with Appellant and affirm.

**Background**

Appellant/Plaintiff Steve Buck, as personal representative of the decedent's estate, filed a complaint against Appellee/Defendant Westside Regional Medical Center for the wrongful death of the decedent. The complaint alleged the following facts:

- On or about May 5, 2012, [the decedent] was brought to Westside and admitted due to complications related to her chronic obstructive pulmonary disease ["COPD"].
- On or about May 7, 2012, [the decedent] was scheduled to have x-rays; consequently, she was transported from her room to the radiology floor.
- Prior to the x-rays being taken, [Appellee's] transport techs moved [the decedent] from the transport gurney and lifted her onto the x-ray table. In the course of moving [the decedent] from the gurney to the x-ray tables, [Appellee's] employees and/or agents accidentally dropped [the decedent] onto the hard x-ray table surface causing her to sustain a fracture of her lumbar spine.

Because of the decedent's age, medical condition, and other factors, the treatment options for the broken back were limited, and her condition began to decline. The complaint alleges that the broken back, "sustained at the hands of [Appellee]," ultimately caused the accidental death of the decedent.

Appellee moved to dismiss the complaint, alleging that Appellant failed to comply with the pre-suit requirements of Chapter 766, Florida Statutes, which covers causes of action in medical negligence cases. Section 766.106 defines a "'[c]laim for medical negligence' or 'claim for medical malpractice' [as] a claim, arising out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (2012).

At a hearing Appellee's motion, Appellant argued that the pre-suit requirements of Chapter 766 do not apply because the four corners of the complaint in this case state a cause of action in *general negligence*, as opposed to *medical negligence*. The trial court ultimately disagreed and granted Appellee's motion to dismiss. The complaint was dismissed, with prejudice, and a final judgment was entered in favor of Appellee.

On appeal, Appellant argues that the trial court erred by dismissing his complaint because the four corners of the complaint state a cause of action in ordinary negligence as opposed to medical negligence.

### Decedent was injured as a Result of *Medical* Negligence

We review an order dismissing a complaint with prejudice *de novo*. *Stubbs v. Plantation Gen. Hosp. Ltd. P'ship*, 988 So. 2d 683, 684 (Fla. 4th DCA 2008) ("*Stubbs I*") (quoting *Palumbo v. Moore*, 777 So. 2d 1177, 1178 (Fla. 4th DCA 2000)). "A motion to dismiss for failure to state a cause of

action admits all well pleaded facts as true, as well as reasonable inferences from those facts[;] . . . [a] court may not properly go beyond the four corners of the complaint in testing the legal sufficiency of the allegations set forth therein." *Id.* (internal quotations and citations omitted).

A claim for negligence is subject to Chapter 766's pre-suit requirements "if the wrongful act is directly related to the improper application of medical services and the use of professional judgment or skill." *Stubbs v. Surgi-Staff, Inc.,* 78 So. 3d 69, 70 (Fla. 4th DCA 2012) ("*Stubbs II*") (internal quotations and citations omitted). On the other hand, "[c]laims of simple negligence or intentional torts which do not involve the provision of medical services do not require compliance with Chapter 766 presuit requirements." *Indian River Mem'l Hosp. v. Browne*, 44 So. 3d 237, 238 (Fla. 4th DCA 2010). When determining whether a complaint alleges a cause of action in medical negligence versus simple negligence, "[t]he key inquiry is whether the action arises out of medical diagnosis, treatment, or care." *Stubbs II,* 78 So. 3d at 70-71 (internal quotations and citations omitted).

In addressing this issue, balance is required. On the one hand, "[i]rreparable harm can be shown where a court incorrectly denies a motion to dismiss for failure to follow pre-suit requirements, as doing so would eliminate the cost-saving features the Act was intended to create." *Palms W. Hosp. Ltd. P'ship v. Burns,* 83 So. 3d 785, 788 (Fla. 4th DCA 2011) (citing *Dr. Navarro's Vein Ctr. of the Palm Beach, Inc. v. Miller,* 22 So. 3d 776, 778–79 (Fla. 4th DCA 2009)). On the other hand, the Florida Supreme Court has declared "that the pre-suit screening procedures should be read in a way which favors access to the courts." *Id.* (citing *Integrated Health Care Servs., Inc. v. Lang–Redway,* 840 So. 2d 974, 980 (Fla. 2002)).

The Florida Supreme Court, in *Silva v. Southwest Florida Blood Bank, Inc.,* 601 So. 2d 1184 (Fla. 1992), addressed the pertinent "medical negligence" terms:

> First, there is no ambiguity to clarify in the words "diagnosis," "treatment," or "care," and we find that these words should be accorded their plain and unambiguous meaning. In ordinary, common parlance, the average person would understand "diagnosis, treatment, or care" to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness.

> This parallels the dictionary definitions of those terms. According to *Webster's Third International Dictionary* (1981), "diagnosis" means "the art or act of identifying a disease from its signs and symptoms." *Id.* at 622. "Treatment" means "the action or manner of treating a patient medically or surgically." *Id.* at 2435. "Care" means "provide for or attend to needs or perform necessary personal services (as for a patient or child)." *Id.* at 338. Likewise, in medical terms, "diagnosis" means "[t]he determination of the nature of a disease." *Stedman's Medical Dictionary* 428 (25th ed. 1990). "Treatment" means "[m]edical or surgical management of a patient." *Id.* at 1626. And "care" means "the application of knowledge to the benefit of . . . [an] individual." *Id.* at 249.

*Id.* at 1187.

The complaint at issue in this case alleges the decedent sustained injuries while she was in the hospital being treated for her COPD. During the course of her treatment, and while she was being **transported from her gurney to an x-ray table** by hospital employees and/or agents, she was dropped and injured. As such, this case is very similar to *Stubbs II*. In that case, we held the trial court correctly applied the Chapter 766 pre-suit requirements to a complaint that alleged "[a] hospital orderly . . . instructed [the appellant] to move from a test bed to a gurney and that she fell while attempting this due to [the orderly's] negligence in failing to exercise reasonable care in assisting her and in failing to prevent her fall." *Stubbs II*, 78 So. 3d at 70, 71.

We are aware that our holding in *Stubbs II* was based in part upon discovery which revealed that the "orderly" referenced in the complaint "was a nurse, not an orderly" and the court's decision referenced the nurse's "provision of medical care and services." *Id.* at 71. Moreover, Judge May's concurring opinion presents "[her] view [that] once a medical procedure has begun, whatever happens during that procedure should be subject to the requirements for filing a medical negligence action *if* the allegations are directed at medical personnel." *Id.* at 72 (May, J., concurring) (emphasis added). In the instant case, we do not know if the individuals who were transporting the decedent were doctors, nurses, "transport tech," or orderlies. However, we find that is not determinative, as the complaint itself leads to the conclusion that these hospital employees or agents were engaged in "the rendering of . . . medical care or services" in that they were involved in lifting the decedent from the transport gurney and placing her on the x-ray table as part of a medical procedure (medical imaging by use of x-rays). As such, they were providing

4

for or attending to the patient's needs and/or performing "necessary personal services." *Silva,* 601 So. 2d at 1187.

Our conclusion finds support in the case law addressing this issue that found that the complaint constituted a claim of medical negligence: *Stubbs II,* 78 So. 3d at 71-72 (patient was being moved from a "test bed" to a gurney); *Indian River Memorial Hospital,* 44 So. 3d at 238 (patient fell out of a stretcher and the medical negligence related to the failure to properly secure her on the stretcher). *See also S. Miami Hosp. v. Perez,* 38 So. 3d 809, 812 (Fla. 3d DCA 2010) (claim for damages attributable to patient's fall from a hospital bed in the critical care unit deemed a medical negligence action); *Neilinger v. Baptist Hosp. of Miami, Inc.,* 460 So. 2d 564, 566 (Fla. 3d DCA 1984) (patient "was descending from an examination table under the direction and care of hospital employees"); *Corbo v. Garcia,* 949 So. 2d 366, 368-69 (Fla. 2d DCA 2007) (plaintiff was injured while connected to physical therapy "electric stimulation" machinery that was allegedly not properly maintained); *Goldman v. Halifax Med. Ctr., Inc.,* 662 So. 2d 367, 368 (Fla. 5th DCA 1995) (the complaint alleges that the operator of mammographic equipment "negligently applied excessive pressure and caused one of [the plaintiff's] silicone breast implants to rupture" and that the equipment had not been properly calibrated); *St. Anthony's Hosp., Inc. v. Lewis,* 652 So. 2d 386, 387 (Fla. 2d DCA 1995) ("The duty of the hospital to select and review health care personnel arises under the medical malpractice statute [and] the negligent medical treatment 'is both necessary to the claims against the [hospital] and inextricably connected to them.'") (quoting *Martinez v. Lifemark Hosp. of Fla., Inc.,* 608 So. 2d 855, 857 (Fla. 3d DCA 1992)).

The cases in which the court found that the claims related to "ordinary" negligence are markedly different: *Quintanilla v. Coral Cables Hosp., Inc.,* 941 So. 2d 468, 470 (Fla. 3d DCA 2006) (nurse spilled hot tea on patient); *Mobley v. Gilbert E. Hirschberg, P.A.,* 915 So. 2d 217, 219 (Fla. 4th DCA 2005) (concluding the medical treatment had not begun when the plaintiff was hit in the head with a dental x-ray machine); *Tenet St. Mary's, Inc. v. Serratore,* 869 So. 2d 729 (Fla. 4th DCA 2004) (patient injured when hospital employee, attempting to return the patient's chair to an upright position by kicking the footrest, inadvertently kicked the patient); *Lynn v. Mount Sinai Med. Ctr., Inc.,* 692 So. 2d 1002, 1004 (Fla. 3d DCA 1997) (finding that the "regimented collection of urine samples is not a 'medical service'"). It is further noted that none of these "ordinary negligence" decisions were predicated on the negligent employee's job title or responsibilities, i.e. whether they were "medical personnel."

**Conclusion**

We find that the instant action arises out of the provision of medical care and is "directly related to the improper application of medical services and the use of professional judgment or skill." *See Stubbs II*, 78 So. 3d at 70 (internal quotations and citations omitted). Accordingly, the trial court correctly dismissed the complaint by applying the pre-suit requirements of Chapter 766, and we affirm.

*Affirmed.*

GROSS and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***