**MARK E. POMPER, M.D., P.A., a Flori-
da Profit Corporation d/b/a Horizon
Medical Services, and Julia Reyes, Pe-
titioners,**

v.

**Marjorie FERRARO and Roy Ferraro,
her husband, individually and as
husband and wife, Respondents.**

No. 4D16–1287

District Court of Appeal of Florida,
Fourth District.

[December 21, 2016]

Lissette Gonzalez and Kathryn L. Ender of Cole, Scott & Kissane, P.A., Miami, for petitioners.

Barbara J. Taggart and Eric A. Peterson of Peterson Bernard, West Palm Beach, for respondents.

CONNER, J.

Petitioners Mark E. Pomper, M.D., P.A., doing business as Horizon Medical Services ("Horizon Medical"), and Julia Reyes, seek a writ of certiorari to quash the trial court's order denying their motion to dismiss a negligence action. Petitioners assert irreparable harm by the trial court's departure from the essential requirements of law in denying their motion to dismiss for Respondents' failure to comply with the presuit requirements for medical malpractice actions contained within section 766.106, Florida Statutes (2015). The core dispute is whether the complaint alleges medical malpractice or simple negligence.

We have certiorari jurisdiction. *Indian River Mem'l Hosp. v. Browne*, 44 So.3d 237 (Fla. 4th DCA 2010). For the reasons discussed below, we deny the petition without prejudice.[1]

### Pertinent Facts and Trial Court Proceedings

Respondents Marjorie Ferraro and her husband, Roy Ferraro, sued Horizon Medical and "Jane Doe,"[2] alleging that "Jane Doe" was negligent while working in the course and scope of her employment with Horizon Medical, causing physical injury to Marjorie. The relevant allegations of the complaint are:

4. At all times material hereto, MARK E. POMPER, M.D., P.A., .... is and was at all times material hereto doing business as HORIZON MEDICAL SERVICES.

5. At all times material hereto, the as yet unidentified woman/employee denominated herein as "JANE DOE" .... at all times material hereto was acting and functioning within the course and scope of her employment with HORIZON.

. . . .

7. Heretofore and in and around August and September 2015, MARJORIE FERRARO was diagnosed with a skin cancer on her shin. Her treating physician referred her to Defendant HORIZON for appropriate radiation treatment. After having been seen by physician representatives of HORIZON a course of action was prescribed which included radiation to the shin area of MARJORIE FERRARO by means of a mobile radiation van that traveled to and conducted the radiation on MARJORIE FERRARO over the course of approximately two months. On each and every occasion of this radiation treatment, an employee of HORIZON known only as "Pedro" would come to the lobby of MARJORIE FERRARO's residence ... [and] direct that said Plaintiff get into the wheelchair provided by "Pedro", at which time "Pedro" would wheel her approximately one hundred yards to the south side of [the residence], at which point an automatic lift would hoist the wheelchair (with plaintiff in a sitting position in the wheelchair) onto the mobile radiation van where the necessary treatment was given.

8. On or about the 24th day of September, 2015, "JANE DOE" while in the course and scope of her employment with Defendant HORIZON came to the lobby of [the residence] without a wheelchair and instructed MARJORIE FERRARO to "follow" her. Obediently, Plaintiff, who is ninety-nine years old did just that and "JANE DOE" led the way toward the mobile radiation van located on the south side of [the residence]; a distance of approximately one hundred yards.

. . . .

10. While Plaintiff, MARJORIE FERRARO, "followed" JANE DOE, "JANE DOE" led the Plaintiff directly over a parking bumper without advising or warning of its existence or so much as supporting the Plaintiff over the parking bumper, at which point the Plaintiff was caused to trip and fall over the parking bumper causing severe and permanent injuries.

 Petitioners moved to dismiss, asserting Respondents' failure to comply with the presuit requirements of section 766.106 applicable to medical malpractice actions. Respondents opposed the motion,

---

1. This case demonstrates the importance of pleading causes of action properly.

2. "Jane Doe" described in the complaint was subsequently identified in the proceedings as Petitioner Julia Reyes.

asserting that the complaint stated a cause of action for simple negligence. After a hearing, the trial court denied the motion without explaining its reasoning, resulting in this petition. Our review is de novo. *Riverwalk at Sunrise Homeowners Ass'n, Inc. v. Biscayne Painting Corp.*, 199 So.3d 348, 350 (Fla. 4th DCA 2016).

*Appellate Analysis*

█ Section 766.106 establishes the pre-suit notice requirements for complaints alleging claims for medical malpractice. Compliance with the statute is a condition precedent to filing the action, and failure to comply can be grounds for dismissal. *Kukral v. Mekras*, 679 So.2d 278, 281 (Fla. 1996); *Hosp. Corp. of Am. v. Lindberg*, 571 So.2d 446, 448 (Fla. 1990).[3]

█ Section 766.106(1)(a) defines a claim for medical negligence or medical malpractice as "a claim, arising out of the rendering of, or the failure to render, medical care or services." As we explained in *Buck v. Columbia Hosp. Corp. of South Broward*, 147 So.3d 604 (Fla. 4th DCA 2014):

A claim for negligence is subject to Chapter 766's pre-suit requirements "if the wrongful act is directly related to the improper application of medical services and the use of professional judgment or skill." *Stubbs v. Surgi–Staff, Inc.*, 78 So.3d 69, 70 (Fla. 4th DCA 2012) ("*Stubbs II*") (internal quotations and citations omitted) .... When determining whether a complaint alleges a cause of action in medical negligence versus simple negligence, "[t]he key inquiry is whether the action arises out of medical

diagnosis, treatment, or care." *Stubbs II*, 78 So.3d at 70–71 (internal quotations and citations omitted).

In addressing this issue, balance is required. On the one hand, "[i]rreparable harm can be shown where a court incorrectly denies a motion to dismiss for failure to follow presuit requirements, as doing so would eliminate the cost-saving features the Act was intended to create." *Palms W. Hosp. Ltd. P'ship v. Burns*, 83 So.3d 785, 788 (Fla. 4th DCA 2011) (citing *Dr. Navarro's Vein Ctr. of the Palm Beach, Inc. v. Miller*, 22 So.3d 776, 778–79 (Fla. 4th DCA 2009)). On the other hand, the Florida Supreme Court has declared "that the pre-suit screening procedures should be read in a way which favors access to the courts." *Id.* (citing *Integrated Health Care Servs., Inc. v. Lang–Redway*, 840 So.2d 974, 980 (Fla.2002)).

*Id.* at 606.

█ When evaluating complaints, the courts must be mindful that:

[N]ot every alleged wrongful act by a healthcare provider, or its employee, amounts to medical malpractice. The alleged wrongful act must be directly related to the improper application of medical services to the patient and the use of professional judgment or skill. *Mobley v. Gilbert E. Hirschberg, P.A.*, 915 So.2d 217, 219 (Fla. 4th DCA 2005) (quoting *Reeves v. N. Broward Hosp. Dist.*, 821 So.2d 319, 322 (Fla. 4th DCA 2002)). The critical question is whether the plaintiff must rely on the medical negligence standard of care as defined by the statute to prevail.[4] *Quintanilla v. Coral Gables*

**3.** In *Lindberg*, our supreme court interpreted section 768.57, Florida Statutes, which was renumbered in 1988 as section 766.106, Florida Statutes. Ch. 98–166, § 164, at 2128, Laws of Fla.

**4.** Section 766.102(1), Florida Statutes (2015), provides:

[T]he claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given

*Hosp., Inc.*, 941 So.2d 468, 469–70 (Fla. 3d DCA 2006) (footnote omitted) (citing *Integrated Health Care Servs., Inc. v. Lang-Redway*, 840 So.2d 974, 980 (Fla. 2002)); *see also Browne*, 44 So.3d at 238–39 (determining an action to be for medical malpractice because the claim could be proven only through evidence that the hospital agents fell below the prevailing standard of professional care).

■ The complaint's allegations govern the analysis. *See generally Doe v. Baptist Primary Care, Inc.*, 177 So.3d 669, 674 (Fla. 1st DCA 2015). The problem here is that the complaint was conspicuously silent in identifying the duty owed by Petitioners.

■ A cause of action for negligence has four elements: (1) the existence of a duty recognized by law; (2) breach of that duty; (3) injury or damage recognized by law; and (4) a sufficient causal connection between the injury and the breach of duty. *See, e.g., Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003); *Horton v. Freeman*, 917 So.2d 1064, 1066 (Fla. 4th DCA 2006). In a medical negligence action, the alleged wrongful act, or breach of duty, must be directly related to the improper application of medical services to the patient and to the use of professional judgment or skill.

■ The complaint here alleged that Marjorie tripped on a parking bumper while walking to the mobile radiation van. More specifically, she alleged that 'Jane Doe' "came to the lobby of [her residence] without a wheelchair and *instructed* MARJORIE FERRARO to 'follow' her" and that "[w]hile Plaintiff, MARJORIE FERRARO, 'followed' JANE DOE, 'JANE DOE' led the Plaintiff directly over a parking bumper without advising or warning of

its existence or so much as supporting the Plaintiff over the parking bumper, at which point the Plaintiff was caused to trip and fall over the parking bumper." (emphasis added). Certainly, such allegations appear to allege simple negligence. However, the complaint included additional allegations.

Immediately prior to alleging the actions of "Jane Doe," the complaint alleged that Marjorie received multiple radiation treatments for skin cancer in the mobile van operated by Horizon Medical while parked approximately one hundred yards from the lobby of Marjorie's residence. More specifically, it alleged that *"[o]n each and every occasion of this radiation treatment,* ... 'Pedro' [an employee of Horizon Medical,] would come to the lobby of MARJORIE FERRARO's residence" and *"direct* that said Plaintiff get into the wheelchair provided by 'Pedro', at which time 'Pedro' would wheel her [to the van] and an automatic lift would then hoist the wheelchair (with plaintiff in a sitting position in the wheelchair) onto the mobile radiation van where the necessary treatment was given." (emphases added).

These allegations indicate that moving Marjorie from her lobby to the van was directly associated with the treatment, similar to the situation in which a patient is wheeled from a patient room in a hospital to the surgical unit in the hospital. Of particular concern is that the allegations of Pedro's prior pattern of conduct "on each and every prior occasion" suggest a medical determination that transportation in a wheelchair was needed and a standard of professional care was violated by Jane Doe.

Petitioners point to this suggestion or inference to argue that the claim sounds in

health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is

recognized as acceptable and appropriate by reasonably prudent similar health care providers.

medical negligence. They liken the case to "transport" cases that have been determined by courts to allege medical negligence. *See Buck*, 147 So.3d at 604 (holding that claim was for medical negligence where an estate alleged that, in the course of moving the patient from the gurney to the x-ray table, hospital's employees accidently dropped patient onto the table's hard surface); *Stubbs*, 78 So.3d at 71 (holding that claim was for medical negligence when patient's attempt to move from treatment bed to gurney arose from provision of medical care and services to patient); and *Browne*, 44 So.3d at 238–39 (holding that claim against hospital arising from patient's fall from a stretcher in a hospital's emergency room sounded in medical negligence).

Respondents distinguish between the actual delivery of treatment to a patient and preparation or "setting up" for such treatment, as in *Mobley*. In *Mobley*, we held that the cause of action alleged against a dentist was simple rather than medical negligence. There, a patient was injured when an employee pulled the arm of an x-ray machine to dislodge it from being jammed, striking the patient in the face with the machine. *Mobley*, 915 So.2d at 219. We reasoned that "[d]eciding how to unstick the arm of the x-ray machine was not a medical service requiring the use of a medical professional's judgment or skill." *Id.* at 218–19. Additionally, we pointed out that "the actual delivery of treatment had yet to begin," and that "[t]here is a difference between setting up to perform a medical procedure and its actual performance." *Id.* at 219.[5]

Respondents also look to *Feifer v. Galen of Florida, Inc.*, 685 So.2d 882 (Fla. 2d DCA 1996). In *Feifer*, the appellants were told by hospital admission employees they would have to walk on their own power to the various areas of the building, all at considerable distances from the reception area and each other, down long corridors with hard floors, no handrails, and no benches or chairs for sitting or resting, and with neither a wheelchair nor an escort provided to assist Mr. Feifer, who was alleged to be ailing, elderly, and frail. *Id.* at 883–84. The opinion does not indicate whether Mr. Feifer was en route to, or leaving after, receiving a medical diagnostic or treatment procedure.

The Second District concluded that the appellants clearly were attempting to allege a cause of action for simple negligence in maintaining its premises in a manner to protect its invitees from harm while on the premises. *Id.* at 884. Although the opinion lacks sufficient facts to guide this case, the Second District's warning to plaintiffs warrants mention:

> We would caution plaintiffs in those actions where they allege that a medical care provider has committed an act of ordinary negligence that they will not be allowed, in presenting their case, to slide back and forth between the standards of care and proof required to show ordinary negligence as opposed to medical negligence.

*Id.* at 885.

The facts alleged in the instant complaint do not support a theory that injury occurred while a medical diagnostic or medical treatment procedure was occurring. Arguably, one could conclude that the complaint alleged that pre-treatment medical *care* was being provided to Marjorie in transporting her to the mobile radiation van. However, Petitioners have not argued or established in the record on appeal that there is a professional standard of care

---

**5.** Apparently, the issue of whether a *diagnostic* medical procedure had begun was not discussed.

applicable to assisting a patient with transportation to a mobile radiation van.

Although we are concerned about the significance of the allegations regarding prior use of a wheelchair and the course of conduct by Pedro, as compared to Julia Reyes, we cannot conclude at this stage of the proceeding, without a clearer statement in the complaint as to the duty owed by Petitioners and how it was breached, that the petition should be granted. As the Florida Supreme Court has recognized, "[i]f there is doubt as to the applicability of such a statute, the question is generally resolved in favor of the claimant." *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So.2d 945, 947 (Fla. 1994) (citing *Baskerville–Donovan Eng'rs, Inc. v. Pensacola Exec. House Condo. Ass'n*, 581 So.2d 1301, 1303 (Fla. 1991)). Thus, we deny the petition without prejudice to raise the issue of noncompliance with section 766.102 if a revised complaint or discovery more clearly demonstrates that Respondents cannot prove their case without establishing a violation of a professional standard of care.

*Petition denied without prejudice.*

Warner and Klingensmith, JJ., concur.