NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES J. McMANUS,  )
　　　　　　　　　　 )
　　　　　　Appellant, )
　　　　　　　　　　 )
v.　　　　　　　　　 )　　Case No.  2D18-2371
　　　　　　　　　　 )
DR. G.A. GAMEZ and JOAN DENMARK, )
　　　　　　　　　　 )
　　　　　　Appellees. )
_____ )

Opinion filed August 7, 2019.

Appeal from the Circuit Court for
Lee County; Geoffrey Henry Gentile,
Judge.

James J. McManus, pro se.

Robin D. Black and Douglas Nail of Law
Offices of Lorraine Lester, Lake Mary
(withdrew after briefing); Caryn L.
Bellus of Kubicki Draper, P.A., Miami
(substituted as counsel of record) for
Appellees.

MORRIS, Judge.

　　　　　James J. McManus appeals from an order dismissing with prejudice his

complaint against Dr. G.A. Gamez and Joan Denmark.  Because we conclude that

McManus's complaint was grounded in ordinary negligence, rather than medical

negligence, we hold that the trial court erred in dismissing the complaint based on

McManus's failure to comply with the presuit requirements set forth in section 766.106(2), Florida Statutes (2013).

BACKGROUND

McManus's complaint alleged that during an appointment for neurological testing on July 1, 2013, Dr. Gamez and Ms. Denmark left the room after the testing was completed and that McManus was left alone on an examination table "without sides." He further alleged that he fell from the table striking his head, losing consciousness, and suffering a concussion. He claimed to have suffered continuing injuries as a result of the incident.

Dr. Gamez and Ms. Denmark filed their first motion to dismiss, arguing in relevant part that McManus had failed to comply with the presuit screening and notice requirements set forth in chapter 766. McManus responded by filing a request "to file the pre-suit [sic] screening & notice requirements" or, in the alternative, to have the case be accepted as an ordinary negligence case. In March 2016, the trial court abated the case "until such time as [McManus] complies with the pre-suit [sic] requirements in chapter 766."

However, rather than filing a notice of compliance with the presuit screening and notice requirements, McManus filed a motion to amend his complaint, asking to change his allegations from sounding in medical negligence to ordinary negligence. He argued that because Dr. Gamez and Ms. Denmark were not rendering medical care at the time he fell off the table, a claim sounding in ordinary negligence was more appropriate. A hearing was conducted on the motion to amend, though no transcript was provided to this court. However, the trial court's minutes of hearing

reflect that the court denied the motion for "not meeting legal standards" and because McManus had not filed an amended complaint.

Thereafter, on October 6, 2017, Dr. Gamez and Ms. Denmark filed a second motion to dismiss with prejudice based on McManus's continued failure to comply with presuit screening and notice requirements within the statute of limitations. They alleged that because the injury allegedly occurred on July 1, 2013, because McManus alleged that he became aware that the injury was caused by medical malpractice on July 2, 2013, and because the statute of limitations was never tolled, the statute of limitations expired on July 2, 2015. McManus filed a response asserting that this case was one alleging ordinary negligence and not medical negligence.

After a hearing, the trial court granted Dr. Gamez and Ms. Denmark's motion to dismiss with prejudice. In doing so, the trial court explained that "[b]ased on the four corners of the Complaint, . . . the absolute latest date that the statute of limitations could have been triggered in this matter would have been June 26, 2015, the date [McManus] filed [his] Original Complaint for Medical Malpractice." The court also noted that McManus had still failed to plea or allege that he had complied with the presuit notice requirements.

ANALYSIS

We review an order dismissing a complaint with prejudice de novo. Brooke v. Shumaker, Loop & Kendrick, LLP, 828 So. 2d 1078, 1080 (Fla. 2d DCA 2002).

Preliminarily, we reject Dr. Gamez and Ms. Denmark's argument that McManus's June 12, 2018, notice of appeal was untimely because the trial court's April

24, 2018, order granting their motion to dismiss with prejudice was a final, appealable order. The April 2018 order merely granted the motion to dismiss; it did not dismiss the action. Consequently, it was not a final, appealable order. See Better Gov't Ass'n of Sarasota Cty. v. State, 802 So. 2d 414, 415 n.3 (Fla. 2d DCA 2001); Hayward & Assocs. v. Hoffman, 793 So. 2d 89, 91 (Fla. 2d DCA 2001). Rather, McManus's notice of appeal was prematurely filed because this court had to relinquish jurisdiction to the trial court for entry of a final, appealable order dismissing the complaint with prejudice, which was eventually filed on August 6, 2018. Upon receipt of that final, appealable order, this court was vested with jurisdiction. See Fla. R. App. P. 9.110(*l*).

Turning to the merits, we acknowledge that compliance with the presuit screening and notice requirements set forth in section 766.106(2) is a condition precedent to filing a medical malpractice action and that failure to comply is a reason to dismiss a medical malpractice complaint. Mark E. Pomper, M.D., P.A. v. Ferraro, 206 So. 3d 728, 731 (Fla. 4th DCA 2016). However, "the mere fact that 'a negligent act occurred in a medical setting does[ not] make it medical negligence.' " Vance v. Okaloosa-Walton Urology, P.A., 228 So. 3d 1199, 1200 (Fla. 1st DCA 2017) (quoting Shands Teaching Hosp. & Clinics, Inc. v. Estate of Lawson, 175 So. 3d 327, 332 (Fla. 1st DCA 2015) (en banc)). A claim for medical malpractice or medical negligence has been defined by the legislature as "a claim, arising out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a); Nat'l Deaf Academy, LLC v. Townes, 242 So. 3d 303, 309 (Fla. 2018); Ferraro, 206 So. 3d at 731. "[P]roving a medical malpractice claim requires establishing that the allegedly negligent act 'represented a breach of the prevailing professional standard of care,' as testified to by

- 4 -

a qualified medical expert."  Townes, 242 So. 3d at 309 (quoting § 766.102(1), Fla. Stat. (2008)).  In order to determine whether a claim is one grounded in medical malpractice, a court must consider "(1) whether the action arose out of 'medical . . . diagnosis, treatment, or care,' and (2) whether such diagnosis, treatment, or care was rendered by a 'provider of health care.' "  Id. (quoting Silva v. S.W. Fla. Blood Bank, Inc., 601 So. 2d 1184, 1186 (Fla. 1992)).  "[T]he words 'diagnosis,' 'treatment,' and 'care' should be 'accorded their plain and unambiguous meaning,' " namely "ascertaining a patient's medical condition through examination or testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness."  Id. (quoting Silva, 601 So. 2d at 1187).  Thus, "for a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill."  Id. at 311; see also Ferraro, 206 So. 3d at 731.

"[A] complaint's allegations govern the analysis."  Ferraro, 206 So. 3d at 732.  "[A]ny 'doubt' as to whether a claim is for ordinary negligence or medical malpractice should be 'generally resolved in favor of the claimant.' "  Townes, 242 So. 3d at 309 (quoting J.B. v. Sacred Heart Hosp. of Pensacola, 635 So. 2d 945, 947 (Fla. 1994)); see also Feifer v. Galen of Fla., Inc., 685 So. 2d 882, 885 (Fla. 2d DCA 1996).

Courts have held that claims sounded in medical negligence where patients have fallen out of hospital beds or off of stretchers under certain circumstances.  Cf. Stubbs v. Surgi-Staff, Inc., 78 So. 3d 69, 70-71 (Fla. 4th DCA 2012) (holding that where a hospital nurse instructed a patient to move from a test bed to a gurney and where patient fell and was injured while doing so, the plaintiff's complaint "sounded in

negligence attributable to [the nurse's] provision of medical care and services"); Indian River Mem'l Hosp. v. Browne, 44 So. 3d 237, 238-39 (Fla. 4th DCA 2010) (holding that where patient was admitted to emergency room in a disoriented and confused state and left alone on stretcher with guardrail unsecured and where patient fell from stretcher ultimately leading to his death, estate's claim was one of medical negligence because it involved the claim that the hospital failed to implement adequate procedures to protect emergency room patients from falling from hospital beds, which necessarily involved the standard of care for managing and supervising patients admitted to emergency rooms); S. Miami Hosp., Inc. v. Perez, 38 So. 3d 809, 812 (Fla. 3d DCA 2010) (holding that where patient fell from his hospital bed and was injured after he had been left unrestrained and unsupervised in the critical care unit, his claims arose from the rendering of, or failure to render, medical services because the claims could only be proven "through evidence that the alleged negligent action or inaction of [the] health care provider . . . fell below the prevailing standard of care in the community"); Neilinger v. Baptist Hosp. of Miami, Inc., 460 So. 2d 564, 566 (Fla. 3d DCA 1984) (holding that where patient "slipped and fell on a pool of amniotic fluid while she was descending from an examination table under the direction and care of hospital employees," her claim for damages was one grounded in medical negligence because "the health care provider . . . was performing medical services" at the time of the alleged injury).

But in this case, it is clear from McManus's allegations that no medical services were being provided and that, in fact, the neurological testing had already been completed and that no other persons were assisting McManus off of the table at the time the alleged injuries occurred. Thus, unlike the plaintiffs in Stubbs, Browne, Perez,

and Neilinger, McManus had not been admitted into a hospital, was not currently undergoing any sort of treatment, and was not in the process of either being assisted or instructed to do something by health care providers.

In construing McManus's claim, we find guidance from Vance and Ferraro. In Vance, the plaintiff was at her physician's office for a medical procedure, and the physician initially provided a step for the patient to climb onto the examination table. However, during the medical procedure, the physician removed the step. Once the procedure was completed, the physician told the patient to schedule a follow-up appointment and the physician left the room. The step that had been initially provided to assist patients onto and off of the examination table was never put back into place. As the patient was getting down from the table, without the step, she fell and was injured. 228 So. 3d at 1200.

In her complaint, the plaintiff alleged that the physician's failure to put the step back into place created a known, dangerous condition and that the physician knew or should have known that he had not put the step back into place. Id. In determining that the plaintiff's claim sounded in ordinary negligence versus medical negligence, the First District explained that ordinary negligence was "something jurors can resolve 'by referring to common experience,' whereas medical negligence requires 'the help of experts to establish what is acceptable, appropriate, and prudent' because jurors cannot determine through 'common experience' whether medical standards of care were breached." Id. at 1200-01 (citing Lawson, 175 So. 3d at 332-33). The court elaborated that "[j]urors can use their common experience to evaluate the act of placing and

removing a step used by someone to get on and off a table, just as they could evaluate the act of pulling a chair out from under someone about to sit down." Id. at 1201.

The Fourth District likewise determined that a claim sounded in ordinary negligence where a plaintiff tripped and fell while following a medical provider's employee to a medical treatment area (a mobile radiation van). Ferraro, 206 So. 3d at 733-34. The court noted that the complaint was silent in identifying any duty owed by the medical provider. But the court explained that because "[t]he facts alleged . . . do not support a theory that injury occurred while a medical diagnostic or medical treatment procedure was occurring," it could not determine "at this stage of the proceeding, without a clearer statement in the complaint as to the duty owed by [the medical provider] and how it was breached" and that, therefore, the claim was an ordinary negligence claim. Id. (emphasis added).

While McManus's allegations are admittedly somewhat vague, that fact does not warrant a dismissal with prejudice. The Florida Supreme Court has deemed some claims involving hospital bed falls as falling "into a gray area," and the court has explained that whether those types of claims "sound in ordinary negligence or medical negligence depends on both the specific circumstances under which the injury occurred and the allegations in the pleadings." Townes, 242 So. 3d at 312 n.6 (citing Browne and Perez as examples of cases involving "gray area" claims). Based on the allegations of the current complaint, it is unknown whether McManus had been instructed to get down from the table by Dr. Gamez or Ms. Denmark before they left the

- 8 -

room or whether he fell after deciding to get down from the table on his own accord.[1] However, any doubt about whether the claim sounds in ordinary negligence must be resolved in favor of McManus. Townes, 242 So. 3d at 309. We thus conclude that jurors can use their common experience to determine whether, after a medical diagnostic test has been completed, the act of leaving an elderly person on an examination table without side railings constitutes a negligent act. Cf. Vance, 228 So. 3d at 1200-01 (concluding that jurors could use common experience to evaluate act of placing and removing a step used by patients to get on and off of an examination table).

The trial court erred by concluding that McManus's claim was grounded in medical negligence and thus incorrectly determined that dismissal was warranted due to McManus's failure to abide by the presuit requirements set forth in section 766.106(2) within the two-year statute of limitations applicable to medical negligence claims. Cf. § 95.11(4)(b), Fla. Stat. (2014). We therefore reverse the order dismissing McManus's complaint with prejudice and remand for further proceedings. In doing so, however, we note that our decision rests solely on the four corners of McManus's complaint. Our opinion should not be read to foreclose a later challenge should the case morph into one grounded in medical negligence. See Vance, 228 So. 3d at 1201; Ferraro, 206 So. 3d at 734.

Reversed and remanded.

CASANUEVA and SMITH, JJ. Concur.

---

[1]According to our reading of Vance, that fact might not matter. See Vance, 228 So. 3d at 1200 (noting that after removing step, physician instructed the patient to go to the front desk and schedule an appointment).